812 P.2d 1320

**E. Arnold HAKKILA,**
**Petitioner–Appellant,**

**v.**

**Peggy J. HAKKILA,**
**Respondent–Appellee.**

**No. 10970.**

Court of Appeals of New Mexico.

March 21, 1991.

Certiorari Denied June 4, 1991.

Steven L. Tucker, Jones, Snead, Wertheim, Rodriguez & Wentworth, P.A., San-

ta Fe, and Byron L. Treaster, Los Alamos, for petitioner-appellant.

George M. Scarborough and Winston Roberts–Hohl, Santa Fe, for respondent-appellee.

## OPINION

HARTZ, Judge.

In response to the petition of E. Arnold Hakkila (husband) for dissolution of marriage, Peggy J. Hakkila (wife) counter-petitioned for damages arising from alleged intentional infliction of emotional distress. Husband appeals from the judgment entered against him on the tort claim and from the award of attorney's fees in the divorce proceeding. We reverse the damage award and remand for further proceedings with respect to the award of attorney's fees.

## I. FACTS

Husband and wife were married on October 29, 1975. Each had been married before. They permanently separated in February 1985. Husband filed his petition for dissolution of marriage the following month. Husband, who holds a Ph.D. in chemistry, had been employed at Los Alamos National Laboratory throughout the marriage. Wife, a high school graduate with credit hours toward a baccalaureate degree in chemistry and a vocational degree as a chemical technician, had been employed at the laboratory as a secretary for seven years and as a chemical technician for about seven and one-half years. She voluntarily terminated her employment in December 1979.

The district court found that "[wife's] emotional and mental health, especially since the parties' separation, has been shown to have been characterized by acute depression and one psychotic episode." The district court's findings noted conflicting testimony concerning wife's past and current mental condition. The district court summarized one psychologist's testi-

mony as diagnosing wife "as subject to a borderline personality disorder pre-dating the parties' marriage," and summarized another's as diagnosing her as "an intellectualizing personality in the early years of her marriage and as suffering from acute depression since approximately 1981." Apparently all the experts agreed that wife was temporarily emotionally disabled at the time of the hearing.

Finding No. 22 summarized husband's intentional misconduct:

The manner in which [husband] treated [wife] during the marriage and which resulted in her disability and impairment is as follows. [Husband] on occasions throughout the marriage and continuing until the separation[:]

a. assaulted and battered [wife],

b. insulted [wife] in the presence of guests, friends, relatives, and foreign dignitaries,

c. screamed at [wife] at home and in the presence of others,

d. on one occasion locked [wife] out of the residence over night in the dead of winter while she had nothing on but a robe,

e. made repeated demeaning remarks regarding [wife's] sexuality,

f. continuously stated to [wife] that she was crazy, insane, and incompetent,

g. refused to allow [wife] to pursue schooling and hobbies,

h. refused to participate in normal marital relationship with [wife] which ultimately resulted in only having sexual relations with [wife] on four occasions in the last three years of the marriage,

i. blamed his sexual inadequacies upon [wife].

Finding No. 26 stated:

[Husband's] acts in intentionally inflicting severe emotional distress upon [wife] was so outrageous in character and so extreme in degree as to be beyond all possible bounds of decency and were atrocious and utterly intolerable.

The district court also found:

31. [Wife] has been sufficiently legally incompetent since 1981 to be unable to

file a lawsuit against [husband] for damages, and any statute of limitations which may have run prior to the filing of [wife's] counterclaim for the period from 1981 to the date of the filing of the countersuit were tolled because of such disability.

(Husband has not raised the statute of limitations issue on appeal.)

With respect to each of the matters listed by the district court in Finding No. 22, the record shows [1]:

a. There was evidence of several incidents of assault and battery. In late 1984 when wife was pushing her finger in husband's chest, he grabbed her wrist and twisted it severely. In 1981 during an argument in their home husband grabbed wife and threw her face down across the room, into a pot full of dirt. In 1978 when wife was putting groceries in the camper, husband slammed part of the camper shell down on her head and the trunk lid on her hands. In 1976 and "sometimes thereafter" during consensual sexual intercourse husband would use excessive force in attempting to stimulate wife with his hands.

b. The one incident in which husband insulted wife in the presence of others was at a friend's Christmas party. At about 11:00 p.m. wife approached husband, who was "weaving back and forth with his hands in his pockets," and suggested that they go home. Husband began screaming, "You f____ bitch, leave me alone." Wife excused herself and walked home alone.

c. Wife also testified that when she and husband were home alone he would go into rages and scream at her. There was no evidence of his screaming at her in the presence of others except for the incident described in "b."

d. The locking-out incident occurred after husband returned from a trip. Wife had been at a friend's home where she had eaten dinner and had some wine. During an argument that had ensued when he returned, she grabbed his shirt and popped all the buttons off. She went downstairs and stepped outside. He closed and locked the door. She went across the street to a home of neighbors, who let her in. He then threw his clothes into a camper and drove off for the night. When he returned the next morning, they made up and made love.

e. On several occasions husband told wife that "you prefer women to men." He did not use the word "lesbian." He testified that he meant only that wife preferred the company of other women to his company. She did not testify that his remarks had sexual connotations.

f. Throughout the marriage husband made remarks such as, "You're just plain sick, you're just stupid, you're just insane."

g. With respect to the finding that husband "refused to allow [wife] to pursue schooling and hobbies," husband's brief-in-chief contends that no evidence supports the finding. Wife's answer brief does not respond to the contention, so we will not consider that finding as support for the judgment.

h., i. With respect to the final two items in the finding, husband acknowledges that their sexual relationship atrophied and that wife testified that (1) it was his decision not to engage in sexual relations more frequently, and (2) he blamed her for their poor sexual relationship.

## II. SHOULD WE RECOGNIZE THE TORT OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN THE MARITAL CONTEXT?

### A. Introduction

Husband argues that as a matter of public policy one spouse should have no cause of action against the other spouse for in-

---

1. The evidence supporting the various findings is summarized in husband's brief-in-chief. Because the summaries are not challenged in the answer brief, we have not independently listened to the multitude of tape recordings of the hearing to check the accuracy of the summaries.

tentional infliction of emotional distress. Wife responds that husband's argument is foreclosed in this court by the New Mexico Supreme Court's recognition of the tort.

We reject, at least for the time being, husband's suggestion. Nevertheless, the policy grounds opposing recognition of the tort in this context counsel caution in permitting lawsuits of this nature.

## B. *Supreme Court Precedents Do Not Resolve the Matter*

"New Mexico recognizes the tort of *intentional* infliction of emotional distress." *Ramirez v. Armstrong*, 100 N.M. 538, 540, 673 P.2d 822, 824 (1983) (emphasis in original); *see Dominguez v. Stone*, 97 N.M. 211, 638 P.2d 423 (Ct.App.1981); Acosta, *The Tort of "Outrageous Conduct" in New Mexico: Intentional Infliction of Emotional Harm Without Physical Injury*, 19 N.M.L.Rev. 425 (1989). The tort (also known as the tort of "outrage") is described in *Restatement (Second) of Torts* Section 46 (1965) (the *Restatement*):

Outrageous Conduct Causing Severe Emotional Distress.

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

Wife contends that we must recognize the tort when committed by one spouse against the other because New Mexico has abandoned immunity for interspousal torts.

*See Maestas v. Overton*, 87 N.M. 213, 531 P.2d 947 (1975) (wrongful death—airplane crash); *Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (Ct.App.1973) (intentional stabbing). Yet the abolition of immunity does not mean that the existence of the marriage must be ignored in determining the scope of liability. After explaining the reasons for abolition of interspousal immunity, the commentary to *Restatement* Section 895F points out:

The intimacy of the family relationship may ... involve some relaxation in the application of the concept of reasonable care, particularly in the confines of the home. Thus, if one spouse in undressing leaves shoes out where the other stumbles over them in the dark, or if one spouse spills coffee on the other while they are both still sleepy, this may well be treated as not negligence.

*Id.*, comment h. The comment refers to Section 895G comment k, which explains that despite abolition of parental immunity:

The intimacies of family life also involve intended physical contacts that would be actionable between strangers but may be commonplace and expected within the family. Family romping, even rough-house play and momentary flares of temper not producing serious hurt, may be normal in many households, to the point that the privilege arising from consent becomes analogous.

Thus, the family relationship can be an important consideration in analyzing intrafamilial torts, both negligent and intentional. Despite the abolition of interspousal immunity, we must still evaluate wife's claims in light of the marital context in which they arose. *Cf. Restatement* § 46(2) (liability for outrage when conduct is directed at third person may depend on family relationship of plaintiff and third person).

## C. *Limitations on Liability for Intentional Infliction of Emotional Distress*

To appreciate the importance of the marital context to the tort of outrage, one must

examine the policy considerations underlying restrictions on the scope of the tort. Perhaps the most striking aspect of the tort is that liability does not flow from every act that intends to cause, and does cause, emotional distress. One restriction on the tort is the limitation that the conduct be "extreme and outrageous." Why this limitation? Why should not anyone who "intentionally or recklessly causes severe emotional distress to another" be subject to liability?

Several explanations have been offered. As Professor Magruder stated, "[I]t would be unfortunate if the law closed all the safety valves through which irascible tempers might legally blow off steam." Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 Harv.L.Rev. 1033, 1053 (1936). Courts must recognize that we are not yet as civilized as we might wish. Many, if not all, of us need some freedom to vent emotions in order to maintain our mental health. The law should not require a degree of civility beyond our capacity. Indeed, it has been suggested that because of pervasive incivility in our society, judicial resources would be taxed if a cause of action were permitted for every intentional infliction of emotional distress. Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum.L.Rev. 42, 57 (1982) ("Givelber").

Intentionally making another person unhappy or upset may also serve useful purposes besides simply preserving the mental health of the perpetrator. As Professor Givelber notes, such conduct may be "justified either in pursuit of one's legal rights (e.g., debt collection) or in service of a greater social good (e.g., cross-examination at trial) or for the [recipient's] 'own good' (e.g., basic training)." *Id.* (footnote omitted). *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 54, 108 S.Ct. 876, 881, 99 L.Ed.2d 41 (1988) (noting virtues of some intentionally injurious political cartoons).

An additional reason for restricting the scope of the tort is that there may be a protected liberty interest in conduct that would otherwise be tortious. As Dean Prosser wrote, "There is still, in this country, such a thing as liberty to express an unflattering opinion of another, however wounding it may be to his feelings * * * *" Prosser, *Insult and Outrage*, 44 Cal.L.Rev. 40, 44 (1956) ("Prosser"). Similarly, the interest in personal autonomy apparently has led courts to reject a cause of action when a person intentionally causes emotional distress by engaging in an extramarital relationship, as in *Browning v. Browning*, 584 S.W.2d 406 (Ky.Ct. App.1979) and *Weicker v. Weicker*, 22 N.Y.2d 8, 290 N.Y.S.2d 732, 237 N.E.2d 876 (1968). *See* Givelber, *supra*, at 57.

Finally, the requirement that the conduct be extreme and outrageous provides reliable confirmation of two other elements of the tort—injury and causation—thereby reducing the possibility of unfounded, or even fraudulent, lawsuits. *See id.*; Prosser, *supra*, at 44–45. When conduct is extreme and outrageous, it is more likely that the victim has actually suffered severe emotional distress, and it is more likely that the severe emotional distress suffered by the victim was actually caused by the perpetrator's misconduct rather than by another source.

### D. *Application of the Tort to Interspousal Conduct*

Considerations that justify limiting liability for intentional infliction of emotional distress to only outrageous conduct also suggest a very limited scope for the tort in the marital context.

Conduct intentionally or recklessly causing emotional distress to one's spouse is prevalent in our society. This is unfortunate but perhaps not surprising, given the length and intensity of the marital relationship. Yet even when the conduct of feuding spouses is not particularly unusual, high emotions can readily cause an offended spouse to view the other's misconduct as "extreme and outrageous." Thus, if the

tort of outrage is construed loosely or broadly, claims of outrage may be tacked on in typical marital disputes, taxing judicial resources.

In addition, a spouse's most distressing conduct is likely to be privileged. Partners who are pledged to live together for a lifetime have a right to criticize each other's behavior. *Cf.* Cole, *Intentional Infliction of Emotional Distress Among Family Members,* 61 Den.U.L.Rev. 553, 574 (1984) ("Cole") ("Because the family's functioning depends on open and free communication, even negative give and take is necessary."). Even though one may question the utility of such comments, spouses are also free to express negative opinions of one another. "You look awful" or even "I don't love you" can be very wounding, but these statements cannot justify liability. *See Restatement* § 46 illustration 13 (you look "like a hippopotamus").

Not only should intramarital activity ordinarily not be the basis for tort liability, it should also be protected against disclosure in tort litigation. Although the spouse who raises a claim of outrage has no right to complain of the exposure of matters relevant to the claim, courts must be sensitive to the privacy interests of the defending spouse. Any litigation of a claim is certain to require exposure of the intimacies of married life. This feature of the tort distinguishes it from intramarital torts already recognized in New Mexico. For example, a suit by one spouse against another arising out of an automobile accident poses no such risk. Nor does one ordinarily think of exposure of an incident of battery as implicating legitimate privacy interests. In contrast, in this case the judge found that it was extreme and outrageous conduct for husband to refuse sexual relations with wife. Should we really use this tort as a basis for inquiry into a matter of such intimacy? *Cf. Thompson v. Chapman,* 93 N.M. 356, 600 P.2d 302 (Ct.App. 1979) (actions for alienation of affections engender more harm than good). In determining the scope of the tort of outrage in the marital context, it is necessary to consider the privacy interests of the accused spouse.

Moreover, largely because so much interspousal communication is privileged (not in the evidentiary sense, but in the sense that it cannot be the basis for liability), a reliable determination of causation is difficult if not impossible when outrage is alleged in this context. The connection between the outrageousness of the conduct of one spouse and the severe emotional distress of the other will likely be obscure. Although the victim spouse may well be suffering severe emotional distress, was it caused by the outrageousness of the conduct or by the implied (and privileged) message of antipathy? What could be more devastating to one's spouse than to say, "I don't love you any more"—a statement that could not form the basis for a cause of action? Rejection alone can create severe emotional distress. Suicides by jilted lovers are legion. Every adult knows individuals who have sunk into disabling depression when a spouse seeks divorce. As a result, litigation of an interspousal claim of outrage could easily degenerate into a battle of self-proclaimed experts performing psychological autopsies to "discover" whether the cause of the emotional distress was some particular despicable conduct or simply rejection by a loved one. Of course, no such problem arises in the context of previously recognized intramarital torts. If one spouse commits battery on another or causes an accident by driving negligently, the injuries to the other spouse can readily be tied to the tortious conduct.

In summary, concerns that necessitate limiting the tort of intentional infliction of emotional distress to "extreme and outrageous" conduct—(1) preventing burdensome litigation of the commonplace, (2) protecting privileged conduct and (3) avoiding groundless allegations of causation—argue strongly in favor of extreme care in recognizing intramarital claims of outrage.

A cautious approach to the tort of intramarital outrage also finds support in the

public policy of New Mexico to avoid inquiry into what went wrong in a marriage. New Mexico was the first state to provide for no-fault divorce on the ground of incompatibility. *See* NMSA 1978, § 40–4–1(A) (Repl.Pamp.1989); Wadlington, *Divorce Without Fault Without Perjury,* 52 Va.L.Rev. 32, 45 (1966); H. Clark, *The Law of Domestic Relations in the United States,* § 14.5 (2d ed. 1987). New Mexico apportions community property without regard to fault, NMSA, 1978, § 40–3–8(B) (Repl.Pamp.1989); *Ellsworth v. Ellsworth,* 97 N.M. 133, 135, 637 P.2d 564, 566 (1981) ("Community property is to be divided equally"); *Beals v. Ares,* 25 N.M. 459, 494, 499–500, 185 P. 780, 793 (1919), and grants alimony without consideration of punishment to either spouse. *See Brister v. Brister,* 92 N.M. 711, 715, 594 P.2d 1167, 1171 (1979); *Foutz v. Foutz,* 110 N.M. 642, 798 P.2d 592 (Ct.App.1990).

In addition, although the tort has not been formally abolished, our courts have expressed dissatisfaction with the tort of alienation of affection, which has features similar to the tort of outrage in the marital context. *See Thompson v. Chapman,* 93 N.M. at 358, 600 P.2d at 304 (" '[T]he interests which the action seeks to protect are not protected by its existence, and the harm it engenders far outweighs any reason for its continuance.' ") (quoting *Wyman v. Wallace,* 15 Wash.App. 395, 401, 549 P.2d 71, 74 (1976)); *Cf. Lovelace Medical Center v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991) (citing *Thompson* with apparent approval).

### E. *Conclusion*

■ Consequently, in determining when the tort of outrage should be recognized in the marital setting, the threshold of outrageousness should be set high enough—or the circumstances in which the tort is recognized should be described precisely enough, *e.g.,* child snatching, *cf.* Cole, at 564–66, 570—that the social good from recognizing the tort will not be outweighed by unseemly and invasive litigation of meritless claims.

Some jurisdictions have apparently set the threshold of outrageousness so high in the marital context as to bar all suits. *See Whittington v. Whittington,* 766 S.W.2d 73 (Ky.Ct.App.1989) (no tort of outrage for adultery and fraud by spouse); *Wiener v. Wiener,* 84 A.D.2d 814, 444 N.Y.S.2d 130 (1981); *Pickering v. Pickering,* 434 N.W.2d 758 (S.D.1989) (barring tort of intentional infliction of emotional distress if predicated on conduct which leads to dissolution of marriage). *Cf. Harris v. McDavid,* 553 So.2d 567 (Ala.1989) (no tort of outrage in termination of affair of unmarried couple); *Richard P. v. Superior Court,* 202 Cal. App.3d 1089, 249 Cal.Rptr. 246 (1988) (no cause of action for tort of outrage by husband of mother against biological father); *Chiles v. Chiles,* 779 S.W.2d 127 (Tex.Ct. App.1989) (tort of intentional infliction of emotional distress not recognized in divorce proceeding). *But see Simmons v. Simmons,* 773 P.2d 602 (Colo.Ct.App.1988) (marriage does not preclude wife's action for damages for outrage); *Davis v. Bostick,* 282 Or. 667, 580 P.2d 544 (1978) (approving of the cause of action in marital setting but denying relief because of passage of limitations period); *Twyman v. Twyman,* 790 S.W.2d 819 (Tex.Ct.App. 1990) (negligent infliction of emotional distress); *cf. Van Meter v. Van Meter,* 328 N.W.2d 497 (Iowa 1983) (allowing cause of action against third party for seduction of plaintiff's former husband); *Vance v. Vance,* 41 Md.App. 130, 396 A.2d 296 (1979) (bigamy); *McCoy v. Cooke,* 165 Mich.App. 662, 419 N.W.2d 44 (1988) (cause of action against husband for battery and intentional infliction of emotional distress arising from the battery are not barred by collateral estoppel; no discussion of scope of tort in marital context); *Noble v. Noble,* 761 P.2d 1369 (Utah 1988) (same; husband shot wife and then attempted suicide); *Stuart v. Stuart,* 143 Wis.2d 347, 421 N.W.2d 505 (1988) (same).

■ Thus far, however, New Mexico has not witnessed an onslaught of claims of outrage by one spouse against the other.

There is no need at this time to adopt husband's recommendation that all such claims be barred.

## III. DID WIFE PROVE OUTRAGE?

■ We now move to the specifics of the case before us. The merits of wife's claim can be disposed of summarily. Husband's insults and outbursts fail to meet the legal standard of outrageousness. *See, e.g., Sanders v. Lutz,* 109 N.M. 193, 196, 784 P.2d 12, 15 (1989) (to recover, must show conduct was " 'beyond all possible bounds of decency * * * and utterly intolerable' "); *Restatement* § 46 illustration 4 ("A makes a telephone call but is unable to get his number. In the course of an altercation with the telephone operator, A calls her a God damned woman, a God damned liar and says that if he were there he would break her God damned neck."); illustration 13 (you look "like a hippopotamus"). He was privileged to refrain from intercourse. There was no evidence that the other conduct caused severe emotional distress, as opposed to transient pain or discomfort. *See Restatement* § 46 comment j (explaining meaning of severe emotional distress.)

Indeed, this case illustrates the risk of opening the door too wide to claims of this nature. Despite the claim's lack of merit, husband was subjected to a six-day trial, to say nothing of discovery and other preparation, surveying the rights and wrongs of a ten-year marriage. Motions for summary judgment should be viewed sympathetically in similar cases. If the potential harms from this kind of litigation are too frequently realized, it may be necessary to reconsider husband's suggestion that the tort of outrage be denied in the interspousal context.

We reverse the decision in favor of wife on her claim of intentional infliction of emotional distress.

## IV. ATTORNEY'S FEES

The district court awarded $26,587.70 for wife's attorney's fees. Attorney's fees may be awarded in dissolution proceedings. NMSA 1978, § 40–4–7(A) (Repl.Pamp.1989). Wife does not contend that she would be entitled to attorney's fees for an independent tort proceeding. *See McClain Co. v. Page & Wirtz Constr. Co.,* 102 N.M. 284, 694 P.2d 1349 (1985) (generally, each party must bear its own attorney's fees in the absence of contract, statute, or rule).

■ We reverse the district court's determination of attorney's fees only if there has been an abuse of discretion. *See Fitzsimmons v. Fitzsimmons,* 104 N.M. 420, 429, 722 P.2d 671, 680 (Ct.App.1986). Proper exercise of discretion requires consideration of factors such as the complexity of the issues, the relief sought and recovered, and the ability of both parties to pay. *See id.* In particular, the award of attorney's fees should not exceed an appropriate fee for the amount of work reasonably necessary to prepare for and try the dissolution proceeding. What is reasonably necessary must be measured by reference to the importance of the issues litigated and the party's success.

Only two issues relating to the dissolution of marriage, as opposed to the tort claim, occupied significant attention at trial: alimony and husband's frequent flyer program bonus points. Throughout the proceedings husband had been paying temporary support of $892 per month, equal to half of his net disposable income (after payment of community debts) at the time of filing the petition for dissolution of marriage. After trial husband requested a finding that wife was entitled to temporary alimony of $1,050 per month for the next six months; wife sought temporary alimony of $2,031 per month. The district court awarded $1,050 per month.

The problem with the bonus miles was valuation of their worth and how they could be transferred. Eventually the district court adopted husband's early suggestion that the frequent flyer points be divided and distributed to the parties in kind, thus rendering valuation unnecessary.

Wife's principal contention in support of the award is that the evidence of the tort related to issues in the dissolution proceeding. She contends that "each of the acts which bore on intentional infliction of emotional distress bore directly on the basis for the divorce—incompatibility." Yet the petitioner's allegation of incompatibility was admitted in the answer. Proof was unnecessary. She also contends that "the conduct of the husband caused the disability of the wife and her disability was a relevant factor to be considered in the division of the assets and the award of alimony." Husband, however, did not deny that wife was currently emotionally disabled. The dispute related to the cause of the disability, which was relevant to the tort claim but not to the dissolution action.

█ Wife also contends that she had to incur attorney's fees because of obstructive tactics by husband, apparently in discovery proceedings. In the district court's decision with respect to costs and attorney's fees, Finding No. 21 referred to the "recalcitrant attitude of [husband]." We reject husband's contention on appeal that because the discovery rules themselves provide for sanctions for their abuse, *see* SCRA 1986, 1–037, such abuse should not be considered in awarding attorney's fees under Section 40–4–7(A). So long as an award under Section 40–4–7(A) does not duplicate a sanction imposed for discovery abuse, obstructive behavior of a party during litigation is an appropriate factor for consideration in making such an award. We do not read *Fitzsimmons* to the contrary. *See Fitzsimmons v. Fitzsimmons* (award should take into account "all factors"). Nevertheless, we have not been directed to any evidence of misconduct in the litigation that could justify the amount of attorney's fees awarded.

Because the award of attorney's fees was apparently predicated in part on the incorrect assumption that the dissolution proceeding required litigation of the facts

necessary to establish tort liability, we vacate the award. We express no opinion as to whether any fees should be awarded. If the district court determines that the present record in this case requires the assessment of attorney's fees against husband, it should enter additional specific findings and conclusions explaining the basis of the assessment.

## V. CONCLUSION

For the foregoing reasons we reverse the district court's award on wife's tort claim and remand for further proceedings, based on the present record, with respect to the award of attorney's fees.[2]

IT IS SO ORDERED.

DONNELLY, Judge (specially concurring).

I concur in the result of the foregoing opinion confirming that under New Mexico precedent an interspousal claim of outrage or intentional infliction of emotional distress is actionable, that the evidence presented by wife in support of her tort claim did not meet the threshold requirement for such claim, and that the award of attorney's fees should be remanded for redetermination. I write separately because I believe a different analysis is required to evaluate wife's claim of intentional infliction of emotional distress in a marital setting.

This case raises a troublesome issue of first impression. Husband argues on appeal that public policy considerations should preclude a spouse from initiating a cause of action for intentional infliction of emotional distress predicated upon conduct arising during the marriage of the parties and from raising the tort claim in the divorce proceeding.

Following husband's initiation of divorce proceedings, wife counterclaimed for divorce on the ground of cruel and inhuman

---

**2.** The author of this opinion did not consider the matter discussed in Judge Donnelly's

thoughtful special concurrence because the parties did not brief or argue the issue.

treatment and joined in her counterclaim a claim seeking recovery of damages against husband for intentional infliction of emotional distress based upon conduct alleged to have occurred during the marriage of the parties. Following trial, the trial court granted the divorce, finding that the parties were incompatible, awarded wife alimony in the amount of $1,050.00 per month until further order of the court, and also awarded wife monetary damages resulting from husband's intentional infliction of emotional distress.

The damage award to wife on her tort claim provided that she should

recover $5,000.00 in medical expenses, and the residence of the parties [having a market value of $136,000] free and clear from any interest of [husband's one-half community property interest] and any [existing] mortgage encumbrances, for lost wages for the past, present, and future and for past, present, and future physical and mental pain and suffering.

Decisions of both our supreme court and this court have recognized the actionability of the tort of intentional infliction of emotional distress. *Sanders v. Lutz,* 109 N.M. 193, 784 P.2d 12 (1989); *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983); *Trujillo v. Puro,* 101 N.M. 408, 683 P.2d 963 (Ct.App.1984); *Dominguez v. Stone,* 97 N.M. 211, 638 P.2d 423 (Ct.App.1981); *Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (Ct.App.1972). *See also Restatement (Second) of Torts* § 46 (1965). No New Mexico appellate decision, however, has directly considered the issue of whether a spouse can join a tort claim for intentional infliction of emotional distress with an action for dissolution of marriage. Other states which have considered this issue have reached diverse results, as observed in the opinion of Judge Hartz.

The Utah Supreme Court, in *Walther v. Walther,* 709 P.2d 387 (Utah 1985), ruled that tort actions between spouses should not be tried in a divorce proceeding. In *Windauer v. O'Conner,* 107 Ariz. 267, 485 P.2d 1157 (1971) (in banc), the Arizona Su-

preme Court recognized the right of a spouse to sue the other spouse in tort for an intentional wrong inflicted on the other but restricted the bringing of such action until after conclusion of the divorce action. Similarly, in *Simmons v. Simmons,* 773 P.2d 602 (Colo.App.1988), the Colorado Court of Appeals observed that considerations of fault or misconduct are inappropriate in proceedings for dissolution of marriage, noting that divorce actions are primarily equitable in nature. The *Simmons* court held:

[W]e adopt the reasoning of the Utah and Arizona courts, and hold that the efficient administration of dissolution cases requires their insulation from the peculiarities of matters at law. The joinder of marriage dissolution actions with claims sounding in tort or, for instance, contract would require our trial courts to address many extraneous issues, including trial by jury, and the difference between the "amicable settlement of disputes that have arisen between parties to a marriage," and the adversarial nature of other types of civil cases. Moreover, such would create tension between the acceptance of contingent fees in tort claims and our strong and longstanding public policy against contingent fees in domestic cases. We conclude that sound policy considerations preclude either permissive or compulsory joinder of interspousal tort claims, or non-related contract claims, with dissolution of marriage proceedings.

*Id.* at 604–605 (citations omitted) (quoting 6B Colo.Rev.Stat. § 14–10–102(2)(a) (Repl. Vol.1987)).

Under our Rules of Civil Procedure, SCRA 1986, 1–013(A) and (B), and provisions for compulsory and permissive counterclaims, a spouse is not precluded from joining a tort claim for intentional infliction of emotional distress with an action for dissolution of marriage. *See also* SCRA 1986, 1–018(A); *Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947 (1975) (there is no immunity from tort liability between spous-

es by reason of the marriage relationship); *Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (Ct.App.1973) (recognizing right of spouse to recover for intentional tort inflicted by other spouse).

The facts in this case, however, illustrate the problems confronting the trial court when a tort claim for intentional infliction of emotional distress is joined and tried together with an action for dissolution of marriage. The problems are compounded where a jury trial is demanded in the trial of the tort claim and where the action for dissolution of marriage also involves a claim of alimony. Here, the trial court granted an award of alimony to the wife, based upon a finding that she was in need of $1,050.00 per month to meet her economic needs. The alimony award appears to duplicate in part the compensatory damage award granted to wife on her claim of intentional infliction of emotional distress. . The damages arising from wife's tort claim were awarded by the court based upon her "loss of possibility of gainful employment past, present, and future, and for her medical and psychological expenses past, present, and future." In addition to the general damage award rendered to wife incident to her tort claim, the trial court also awarded her special future medical damages in the sum of $5,000.00, and, among other things, damages to wife for her loss of earnings during the marriage. The earnings of a spouse during marriage, however, are presumptively community property. *See Stroshine v. Stroshine*, 98 N.M. 742, 652 P.2d 1193 (1982). Thus, this portion of the damage award to wife conflicts with the marital property award.

In order for a claimant to establish a prima facie claim of intentional infliction of emotional distress, the elements which must be proven are (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress. *See Nagy v. Nagy*, 210 Cal.App.3d 1262, 258 Cal.Rptr. 787 (1989); *Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984); *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175 (1981). *See also Restatement, supra*, § 46. Whether a defendant's conduct may reasonably be regarded as to be so extreme and outrageous as to permit recovery must be determined on a case-by-case basis. *See Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 460 P.2d 666 (1969).

Applying the above requirements to the facts of this case, the continued verbal outbursts and insults of the husband, directed to wife, although patently providing grounds for dissolution of the marriage, did not reach the threshold requirement imposed by the first element of the four-prong test delineated above. Moreover, wife failed to present evidence distinguishing the emotional distress resulting from husband's conduct toward the wife and the accompanying emotional distress resulting from the breakup of the marriage of the parties, as required under the third and fourth elements outlined above. The record reflects that wife also testified that husband hit her on several occasions; no request was made, however, for an award of damages for assault and battery. A spouse may recover damages for an intentional or negligent injury inflicted by another spouse. *Maestas v. Overton*.

Where a party couples a cause of action for divorce with one for intentional infliction of emotional distress, the threshold requirements of proof in order to establish a prima facie showing of intentional infliction of emotional distress must establish that the acts complained of were so severe as to fall outside the ambit of lawful conduct and that they causally resulted in severe mental anguish. Because emotional distress, and at times severe emotional distress, is a concomitant factor accompanying the dissolution of many marriages, litigation of a tort claim for intentional infliction of emotional distress at the same time the court is hearing an action for dissolu-

tion of marriage improperly injects issues of fault into no-fault divorce proceedings and is destructive of efforts of the trial court to mediate custody and property disputes or to achieve an equitable resolution of the issues between the parties. Moreover, if the tort claim is pursued under a contingent fee agreement, the wife's claim for attorney's fees in the divorce proceeding may become, as in the present case, blurred. The better procedure for the trial judge to follow where a tort claim for outrage is joined with an action for dissolution of marriage is to bifurcate the tort claim from the trial of the divorce proceedings so that the tort claim may be tried separately. *See* SCRA 1986, 1–042(B). *See also Mendenhall v. Vandeventer*, 61 N.M. 277, 299 P.2d 457 (1956) (to avoid potential prejudice resulting from trial of distinct factual issues, separate trial should be held); *Simmons v. Simmons* (sound policy considerations preclude either permissive or compulsory joinder of interspousal tort claims with dissolution of marriage proceedings).

The award of damages for intentional infliction of emotional distress failed to satisfy that four-pronged test required to establish wife's tort claim. *See Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239 (1986). The judgment awarding damages for wife's tort claim should be vacated and set aside, and on remand the community property interest of the parties in the residence, and the indebtedness thereon, should be equitably divided and reapportioned between the parties. I concur with Judge Hartz that the cause should also be remanded for redetermination of the award of wife's attorney's fees.

CHAVEZ, Judge.

I concur in Judge Donnelly's special concurrence.