2008-NMSC-005

176 P.3d 277

**Christopher Lee BALDONADO, et al., Plaintiffs–Respondents,**

v.

**EL PASO NATURAL GAS COMPANY, a foreign corporation, Defendant–Petitioner.**

No. 29,941.

Supreme Court of New Mexico.

Dec. 10, 2007.

Rehearing Denied, No. 29,941, Jan. 10, 2008.

Montgomery & Andrews, P.A., Sarah M. Singleton, Santa Fe, NM, Modrall, Sperling, Roehl, Harris & Sisk, P.A., R.E. Thompson, Albuquerque, NM, Greenberg Traurig, LLP, Brian L. Duffy, Naomi G. Beer, Denver, CO, for Petitioner.

The Blenden Law Firm, Dick A. Blenden, James Phillip Blenden, Martin Law Firm, Wilfred T. Martin, Jr., Lane T. Martin, Kenneth D. Dugan, Carlsbad, NM, Robert P. Schuster, P.C., Robert P. Schuster, Jackson, WY, Blazer Carman Murdock, P.C., J. Nicholas Murdock, Casper, WY, for Respondents.

## OPINION

CHÁVEZ, Chief Justice.

{1} On motion for rehearing, the opinion filed December 4, 2007, is withdrawn, and the following opinion is substituted in its place. The motion for rehearing is otherwise denied.

{2} The issue in this case is whether firefighters may recover damages for intentional infliction of emotional distress sustained in the course of responding to a fire. The answer to this question initially turns on whether the firefighter's rule, as adopted in *Moreno v. Marrs*, 102 N.M. 373, 695 P.2d 1322 (Ct.App.1984), should continue as a part of New Mexico jurisprudence. The rule, which prohibits firefighters from suing for damages sustained while responding to a fire

except where the owner or occupier of the land fails to warn of a known danger or misrepresents the nature of the hazards being confronted, was overruled by the Court of Appeals. In that opinion, one judge would abolish the rule entirely and two judges would prohibit firefighter litigation involving negligence claims. *See Baldonado v. El Paso Natural Gas Co.*, No. 24,821, 143 N.M. 297, 176 P.3d 286 (N.M.Ct.App. June 29, 2006). We adopt a policy-based approach to the firefighter's rule and hold that a firefighter may recover damages if such damages were proximately caused by (1) intentional conduct; or (2) reckless conduct, provided the harm to the firefighters exceeded the scope of risks inherent in the firefighters' professional duties. Applying this rule to the case before us, we conclude that the firefighters have properly pled a claim for intentional infliction of emotional distress.

## I. BACKGROUND

{3} On August 19, 2000, in the early morning hours, a high-pressure natural gas pipeline [1] operated by El Paso Natural Gas Company ruptured near the Pecos River south of Carlsbad, New Mexico. *Baldonado*, No. 24,-821, 143 N.M. 297, 300, 176 P.3d 286, 289, 2006 WL 5358966, ¶ 2. At that time, twelve members of an extended family were camped in the area of the pipeline. The escaping gas ignited, creating a fireball that engulfed the campsite. All twelve family members, including young children, either were killed during the fire or died later from severe burns. The survivors were conscious but in obvious physical pain and mental anguish. The record and the Court of Appeals opinion depict the horror of the scene, which we do not duplicate here. *See id.*

{4} Plaintiffs are paid or volunteer members of the local fire departments who responded to the explosion. Plaintiffs did not assist in putting out the fire, nor do they claim to have suffered any physical injuries from the fire or explosion. Rather, Plaintiffs assert that they suffered extreme emotional distress in witnessing the severe injuries suffered by the victims when Plaintiffs assisted them after the explosion.

{5} Plaintiffs brought suit against Defendant for negligent infliction of emotional distress, intentional infliction of emotional distress, and other counts. Defendant filed a motion to dismiss pursuant to Rule 1–012(B)(6) NMRA, claiming that Plaintiffs' claims were barred by the firefighter's rule. The district court granted Defendant's motion and dismissed Plaintiffs' complaint. Plaintiffs appealed to the Court of Appeals, which affirmed the district court with respect to the negligent infliction of emotional distress claim, but reversed with respect to the intentional infliction of emotional distress claim. *Baldonado*, No. 24,821, 143 N.M. 297, 308, 176 P.3d 286, 297, 2006 WL 5358966, ¶ 35. Defendant filed a petition for writ of certiorari with this Court, contending that the firefighter's rule bars a claim in this case, and that Plaintiffs failed to properly plead a claim for reckless or intentional infliction of emotional distress. *Baldonado v. El Paso Natural Gas Co.*, 2006–NMCERT–009, 140 N.M. 543, 144 P.3d 102. We granted certiorari on the question of intentional infliction of emotional distress.[2]

## II. DISCUSSION

{6} "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 650, 905 P.2d 185, 190 (1995), *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, 131 N.M. 272, 34 P.3d 1148. "[T]he motion may be granted only when it appears the plaintiff cannot be entitled to relief under any state of facts provable under the claim." *Runyan v. Jaramillo*, 90 N.M. 629, 632, 567 P.2d 478, 481 (1977).

{7} Defendant asserts two reasons why the Court of Appeals erred in holding that

---

1. The pipeline measured thirty inches in diameter and was approximately fifty years old.

2. Initially we also granted certiorari on the question of negligent infliction of emotional distress, but later quashed certiorari on that issue.

Plaintiffs' complaint for intentional infliction of emotional distress is legally sufficient. First, Defendant argues that the firefighter's rule in New Mexico has no exception for reckless or intentional conduct, thereby barring Plaintiffs' lawsuit. Second, Defendant argues that New Mexico has adopted the definition of intentional infliction of emotional distress from *Restatement (Second) of Torts* § 46 (1965), and Plaintiffs cannot prove that Defendant's conduct was "directed at" Plaintiffs as required by the *Restatement*. *Id.* § 46(2).

{8} Plaintiffs urge this Court to abolish the firefighter's rule, contending that the rule is outdated, as evidenced by the several jurisdictions that have abolished the rule or created exceptions for intentional torts that would otherwise be excluded by the rule. Plaintiffs also argue that they have stated a cause of action for intentional infliction of emotional distress as defined in *Trujillo v. Northern Rio Arriba Electric Cooperative, Inc.*, 2002–NMSC–004, ¶ 25, 131 N.M. 607, 41 P.3d 333.

## A. The Firefighter's Rule

■ {9} A firefighter's rule bars a firefighter, and possibly other professional rescuers, from suing the party whose actions caused the event to which the firefighter responded. Robert H. Heidt, *When Plaintiffs Are Premium Planners for Their Injuries: A Fresh Look at the Fireman's Rule*, 82 Ind. L.J. 745, 745 (Summer 2007). Although most states have adopted a firefighter's rule, they "disagree considerably about the exceptions to and the scope of" the rule, and in many states the exceptions threaten to swallow the rule. *Id.* at 753. Thus, when deciding to adopt a firefighter's rule, it is necessary to choose among formulations. *Moreno*, 102 N.M. at 377, 695 P.2d at 1326.

{10} States that have adopted a firefighter's rule generally base it on one of three legal theories: (1) duties of landowner to invitees; (2) assumption of risk; or (3) public policy. The original firefighter's rule was based on the duties of a landowner or occupier of the land to invitees or licensees. *Gibson v. Leonard*, 143 Ill. 182, 32 N.E. 182, 183 (1892), *overruled in part by Dini v. Naiditch*,

20 Ill.2d 406, 170 N.E.2d 881, 886 (1960). Some courts have since rejected this theory of the firefighter's rule. *See, e.g., Hass v. Chicago & Nw. Ry. Co.*, 48 Wis.2d 321, 179 N.W.2d 885, 887 (1970). The rule can also be based on assumption of risk, although this theory is also falling out of favor. *See, e.g., Fordham v. Oldroyd*, 171 P.3d 411, 414 (Utah 2007).

{11} Most modern decisions base the firefighter's rule on a public policy rationale. *Id.* at 417 (Wilkins, Assoc. C.J., concurring and dissenting). Utah, the most recent state to adopt the firefighter's rule, chose this approach. *Id.* at 415. Public policy provides a number of rationales for the firefighter's rule. The rule encourages the public to summon assistance when they need help and recognizes that firefighters "have a relationship with the public that calls on them to confront certain hazards as part of their professional responsibilities." *Id.* at 413. The rule also spreads the costs of injury among taxpayers and avoids charging taxpayers twice—once when they pay their taxes for public services, and again when they are sued by those same service providers. Heidt, *supra*, at 760–61. Some courts, however, reject the public policy rationale, arguing that the sounder policy is to allow firefighters to sue for injuries the same as any other injured party. *Fordham*, 171 P.3d at 417 (Wilkins, Assoc. C.J., concurring and dissenting).

{12} In *Moreno*, the Court of Appeals adopted a firefighter's rule for New Mexico based on the California case of *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609 (1977), *superseded by statute* Cal. Civ. § 1714.9 (West 2001) (codifying California's firefighter's rule). *Moreno*, 102 N.M. at 376, 695 P.2d at 1325. The California Supreme Court based its rule on both assumption of risk theories and public policy rationales. *Walters*, 142 Cal.Rptr. 152, 571 P.2d at 612–13.

{13} We agree with the Court of Appeals in *Moreno* that "there should be a fireman's rule." 102 N.M. at 376, 695 P.2d at 1325. We take this opportunity, however, to clarify the rule's definition and scope. In doing so,

we hope to avoid the necessity for myriad exceptions that other states have faced.

{14} We begin by recognizing that a policy-based firefighter's rule follows naturally from our version of the rescue doctrine. Traditionally, the rescue doctrine "prevent[ed] a rescuer from being barred from recovery because of a finding that the rescuer was contributorily negligent" for the injuries he or she received in rescuing a victim. *Restatement (Third) of Torts* § 32 cmt. d (Proposed Final Draft No. 1, 2005). In *Govich v. North American Systems, Inc.*, 112 N.M. 226, 231, 814 P.2d 94, 99 (1991), we examined the impact of our system of comparative negligence on the rescue doctrine. We concluded that the rescue doctrine is "shorthand for a public policy" that imposes a duty of care owed to rescuers. *Id.* at 232, 814 P.2d at 100.

{15} The rescue doctrine creates the need for a firefighter's rule. Because there is no general duty to rescue, the rescue doctrine imposes a duty of care owed to rescuers. However, when the rescuer has a duty to rescue—as is the case with firefighters—the underlying rationale for imposing a duty on the public changes, and the doctrine must change along with the policy.[3] The firefighter's rule accomplishes that change by limiting the scope of the rescue doctrine. In other words, the rescue doctrine creates an exception to traditional tort duties, and the firefighter's rule limits that exception.

{16} We seek a formulation of the firefighter's rule that will avoid piling exception upon exception. Utah, for example, recently adopted a simple firefighter's rule based on culpability: the person creating a peril owes a professional rescuer no duty if the rescuer's injury (1) was derived from the negligence that occasioned the rescuer's response; and (2) was within the scope of risks inherent in the rescuer's professional duties. *Fordham*, 171 P.3d 411, 413.

{17} The Utah test provides a good starting point, but we believe it is too broad

because it allows recovery for injuries arising from negligent actions, so long as those injuries are outside the normal scope of a firefighter's duties. Joining the two prongs in the disjunctive would narrow the test, excluding all injuries arising out of negligent actions. It would, however, also exclude injuries arising out of intentional actions—such as arson—if the injuries are within the normal scope of a firefighter's duties.

{18} We choose to adopt a two-prong test based on culpability that holds the public liable for intentional acts and some reckless acts. Under our test, the person creating a peril owes a professional rescuer no duty if the rescuer's injury (1) was derived from the negligence that occasioned the rescuer's response; or (2) was derived from the reckless conduct that occasioned the rescuer's response and was within the scope of risks inherent in the rescuer's professional duties. This test ignores different "degrees" of negligence, a distinction we rejected in *Govich*, 112 N.M. at 233, 814 P.2d at 101. As in *Moreno*, the test does not depend on the firefighter's categorization as an entrant to land, on which the injury occurred, or on whether the firefighter is a paid professional or a volunteer. *See Moreno*, 102 N.M. at 376–77, 695 P.2d at 1325–26. Furthermore, the specific duties noted in *Moreno*—to warn of hidden hazards and to accurately represent the nature of a hazard—are distinct from the conduct that brings firefighters to the scene, and thus fall outside the scope of today's rule. *See id.* at 378, 695 P.2d at 1327.

{19} In contrast to *Moreno*, this rule does allow recovery for actions that derive from reckless or intentional behavior. *See id.* at 377, 695 P.2d at 1326. The potential injuries to the firefighter are the same, whether they arise from negligence, recklessness, or intentional conduct. From a public policy viewpoint, we do not want to reward reckless or intentional acts by insulating defendants from liability.

---

**3.** We recognize that special relationships, such as the doctor-patient or employer-employee relationship, can create a duty to rescue. *See Johnstone v. City of Albuquerque*, 2006–NMCA–119, ¶ 14, 140 N.M. 596, 145 P.3d 76; *Restatement*

*(Second) of Torts* § 314A (1965). The rescuers in these situations are not professional rescuers, so our ruling today does not affect this category of duties.

■ {20} Plaintiffs base their second claim for relief on the theory that gas transport is an inherently dangerous activity. *Moreno* applied the firefighter's rule to ultrahazardous activities, declining to impose strict liability for injuries to firefighters resulting from such activities. *Id.* We note that the underlying public policy rationales for imposing a duty are the same, whether the fire resulted from an ordinary, an inherently dangerous, or an ultrahazardous activity. Therefore, we hold that the duty to firefighters should be evaluated under the culpability test announced today, rather than strict liability, when firefighters respond to an emergency arising out of an inherently dangerous or ultrahazardous activity.

{21} This is the first opportunity we have had to address the firefighter's rule since *Moreno* was decided over twenty years ago. Tort law, especially with respect to the duties owed to rescuers, has changed significantly during that time. A policy-based approach to the firefighter's rule will encourage the public to ask for rescue while allowing professional rescuers to seek redress in limited but appropriate circumstances.

■ {22} Because Plaintiffs are firefighters, a legally sufficient complaint must allege that Defendant acted recklessly or intentionally. Plaintiffs have claimed damages based on intentional infliction of emotional distress, which requires a showing of reckless or intentional conduct on Defendant's part. *Trujillo*, 2002–NMSC–004, ¶ 25, 131 N.M. 607, 41 P.3d 333; *see also* UJI 13–1628 NMRA. A claim of intentional infliction of emotional distress is therefore legally sufficient under the firefighter's rule, so long as Defendant's actions were intentional or, if reckless, Plaintiffs' injuries exceeded the normal scope of injuries inherent to their profession.

{23} Firefighters will always be subject to some emotional distress when responding to an emergency call. We must determine whether Plaintiffs have alleged facts sufficient to show that their distress could have exceeded the normal scope of distress inherent to their profession; ultimately, however, it will be up to the jury to determine whether Plaintiffs' stress did in fact exceed that

scope. *See Dominguez v. Stone*, 97 N.M. 211, 215, 638 P.2d 423, 427 (Ct.App.1981). Plaintiffs allege that they suffer from continuing, severe emotional distress that "has been manifested by physical symptomotology [sic], has impacted their personal lives, has resulted in recurrent nightmares and flashbacks, has been debilitating, and has been traumatizing." We find that the particular injuries described by Plaintiffs in their complaint could be found to exceed the normal scope of injuries inherent to the profession. Therefore, even if Defendant's actions were reckless, Plaintiffs have alleged sufficient facts to state a claim under the firefighter's rule. We must now determine whether Plaintiffs have alleged sufficient facts to support a cause of action for intentional infliction of emotional distress.

## B. Intentional Infliction of Emotional Distress

■ {24} The tort of intentional infliction of emotional distress was developed primarily by legal scholars rather than the courts. Daniel Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct*, 82 Colum. L.Rev. 42, 42 (1982). It "provides recovery to victims of socially reprehensible conduct, and leaves it to the judicial process to determine, on a case-by-case basis, what conduct should be so characterized." *Id.* Perhaps because of its indeterminacy, its main purpose seems to be to "provide the basis for achieving situational justice." *Id.* at 74–75, 638 P.2d 423.

{25} New Mexico first confronted intentional infliction of emotional distress in *Mantz v. Follingstad*, 84 N.M. 473, 479–80, 505 P.2d 68, 74–75 (Ct.App.1972), but the plaintiffs failed to present sufficient facts to submit the claim to the jury. In the next case to address the tort, the Court of Appeals followed the elements as defined in the *Restatement (Second) of Torts* § 46, when it found that the plaintiffs had established sufficient facts to survive summary judgment on the cause of action. *Dominguez*, 97 N.M. at 214–15, 638 P.2d at 426–27.

{26} This Court has "adopted the approach used in the *Restatement (Second) of Torts* § 46." *Trujillo,* 2002–NMSC–004, ¶ 25, 131 N.M. 607, 41 P.3d 333. The *Restatement* sets out a two-prong approach, providing for both first-party and third-party claims:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

*Restatement (Second) of Torts* § 46.

{27} In *Trujillo,* we also stated that the following elements must be proven: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo,* 2002–NMSC–004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (quoting *Hakkila v. Hakkila,* 112 N.M. 172, 182, 812 P.2d 1320, 1330 (Ct.App.1991)) (Donnelly, J., specially concurring) (internal quotation marks omitted). We note that these elements merely restate the first prong of the *Restatement* test. The second prong of the *Restatement* test was not at issue in *Trujillo,* so we had no reason to address it.[4] Because of the special relationship between Plaintiffs and Defendant, as detailed below, we do not address Plaintiffs' third-party claim under the second prong in this case.

## 1. First–Party Claim

{28} Intentional infliction of emotional distress claims most frequently arise from a preexisting relationship between the plaintiff and the defendant. Givelber, *supra,* at 63. The relationship may have a formal legal basis, such as employer-employee, *id.* at 63–64, or it may be more informal, such as a situation where one party has an obligation to the other that is regulated by the State. *Id.* at 70. One of the first academic articles on intentional infliction of emotional distress noted that the early version of the tort had most frequently been applied to innkeepers and common carriers, and raised the question of "how far this liability for insulting conduct will be extended to other relationships." Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv. L.Rev. 1033, 1051–53 (1936). The *Restatement* also recognizes the importance of relationships: "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Restatement (Second) of Torts* § 46 cmt. e; *see also Restatement (Third) of Torts* § 45 cmt. c ("[W]hether an actor's conduct is extreme and outrageous" depends on the facts of each case, including the relationship of the parties).

{29} Most of the intentional infliction of emotional distress cases in New Mexico have involved such relationships. *See, e.g., Trujillo,* 2002–NMSC–004, ¶¶ 1–2, 131 N.M. 607, 41 P.3d 333 (employer-employee and Human Rights Act); *Coates v. Wal–Mart Stores, Inc.,* 1999–NMSC–013, ¶ 1, 127 N.M. 47, 976 P.2d 999 (employer-employee and Workers' Compensation Act); *Jaynes v. Strong–Thorne Mortuary, Inc.,* 1998–NMSC–004, ¶ 13, 124 N.M. 613, 954 P.2d 45 (contract for burial); *Sanders v. Lutz,* 109 N.M. 193, 194, 784 P.2d 12, 13 (1989) (agreement granting easement); *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 425, 773 P.2d 1231, 1232 (1989) (employer-employee); *Silverman v. Progres-*

4. Although the Court of Appeals quoted the *Restatement* test in its entirety in *Dominguez,* our research has turned up no New Mexico cases that have based a claim on the second prong of the test. *See Dominguez,* 97 N.M. at 214, 638 P.2d at 426.

*sive Broad., Inc.,* 1998–NMCA–107, ¶ 1, 125 N.M. 500, 964 P.2d 61 (employer-employee and federal Civil Rights Act); *Stock v. Grantham,* 1998–NMCA–081, ¶¶ 1, 22, 125 N.M. 564, 964 P.2d 125 (employer-employee and Human Rights Act); *Stieber v. Journal Publ'g Co.,* 120 N.M. 270, 271, 901 P.2d 201, 202 (Ct.App.1995) (employer-employee); *Hakkila,* 112 N.M. at 173, 812 P.2d at 1321 (husband-wife); *Dominguez,* 97 N.M. at 212, 638 P.2d at 424 (employer-employee and Human Rights Act).

{30} Oregon has formally recognized the significance of the relationship between the parties in cases alleging intentional infliction of emotional distress. For example, *Rockhill v. Pollard,* 259 Or. 54, 485 P.2d 28 (1971) (en banc), involved a claim of intentional infliction of emotional distress that arose when a physician turned away accident victims who sought his help. The Oregon Supreme Court noted that "the particular relationship between the parties" was an "important factor" in the case. *Id.* at 31. The Oregon court later clarified this statement, noting that the special relationship between the parties is a factor in determining whether the defendant's conduct is outrageous. *McGanty v. Staudenraus,* 321 Or. 532, 901 P.2d 841, 850 (1995) (en banc) (analyzing claim of intentional infliction of emotional distress in the context of an employer-employee relationship). In fact, almost all successfully pleaded claims in Oregon involved a special relationship. *Delaney v. Clifton,* 180 Or.App. 119, 41 P.3d 1099, 1107 n. 7 (2002).

{31} Other courts have followed Oregon's lead. The Arizona Court of Appeals concluded that *Rockhill* and similar cases from other jurisdictions "emphasize the relationship between the parties as being a factor to consider" in determining whether conduct is outrageous. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.,* 149 Ariz. 85, 716 P.2d 1022, 1027 (Ct.App.1985). A federal court, applying Washington state law, noted that the extreme and outrageous nature of a defendant's conduct must be determined on a case-by-case basis, and that "whether a special relationship exists between the parties" is a factor in that determination. *Masood v. Saleemi,* 2007 WL 2069853, at *6 (W.D.Wash. July

13, 2007); *see also Garretson v. City of Madison Heights,* 407 F.3d 789, 799 (6th Cir. 2005) ("[I]n Michigan, a special relationship between the parties may lower the level of conduct needed to be actionable."); *Robinson v. Intercorp,* 512 F.Supp.2d 1307, 1315 (N.D.Ga.2007) ("[T]he existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous.") (citing *Trimble v. Circuit City Stores, Inc.,* 220 Ga.App. 498, 469 S.E.2d 776 (1996)); *M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681, 688 (1980) ("[T]here are cases in which the extreme and outrageous nature of the conduct arises not so much from what is done as from the abuse by the defendant of a relationship with the plaintiff which gives him power to damage the plaintiff's interests.") (citing William L. Prosser, *Insult and Outrage,* 44 Cal. L.Rev. 40, 47 (1956)); *Taylor v. Metzger,* 152 N.J. 490, 706 A.2d 685, 695 (1998) (surveying cases in several states that found "[T]he employer-employee relationship has been regarded as a special relationship which is a factor to be considered in determining whether liability should be imposed.") (quoting J.D. Lee & Barry A. Lindahl, 3 *Modern Tort Law: Liability and Litigation* § 32.03, at 133–34 (rev. ed.1990)) (internal quotation marks omitted).

{32} In this case Plaintiff's allegations that Defendant is subject to various statutes and regulations could support a finding that Defendant has a special relationship with Plaintiffs. As Defendant points out, federal law seemingly requires Defendant to establish procedures for "[n]otifying appropriate fire ... officials of gas pipeline emergencies and coordinating with them both planned responses and actual responses during an emergency." 49 C.F.R. § 192.615(a)(8) (2006). This regulation requires more than just establishing procedures: Defendant is also required to "establish and maintain liaison with appropriate fire ... officials." *Id.* § 192.615(c). The purpose of this liaison is for Defendant to

(1) Learn the responsibility and resources of each government organization that may respond to a gas pipeline emergency;

(2) Acquaint the officials with the operator's ability in responding to a gas pipeline emergency;

(3) Identify the types of gas pipeline emergencies of which the operator notifies the officials; and

(4) *Plan how the operator and officials can engage in mutual assistance to minimize hazards to life or property.*

*Id.* (emphasis added).

{33} This regulation requires more of both parties than the typical relationship of a member of the general public with the local fire department. It requires more than even a business owner or landlord who must abide by a fire code and pass inspections. This regulation requires active cooperation between Defendant and Plaintiffs. In particular, Section 192.615(c)(4) requires Defendant and Plaintiffs to work together to minimize the exact risk that Plaintiffs allege led to their injuries in this case.

{34} We now must evaluate Defendant's conduct in the context of this potential relationship. We first note that it is highly unlikely that calling firefighters in response to an emergency will ever be considered extreme and outrageous conduct. *See Restatement (Second) of Torts* § 46 cmt. g ("[C]onduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances."). It is always appropriate for firefighters to respond to an emergency, even one caused by an intentional act such as arson, and we do not want to discourage any member of the public from calling for assistance. Thus, we look not to Defendant's response to the emergency, but to Defendant's alleged acts leading up to the emergency.

{35} According to Plaintiffs' complaint, Defendant is required to properly design and maintain its pipelines, and Defendant failed to take the steps necessary to insure the safety of the pipeline at issue. Defendant knew the consequences of such failure: Defendant had been cited for past safety violations, and had experienced at least two previous pipeline explosions, one of which involved severe burns. With respect to the pipeline at issue in this case, Defendant knew that the area around it was used for camping. Defendant also knew, or should have known, that this area of pipeline suffered from the same problems that resulted in the explosions in other pipelines nearby. Despite this knowledge, and its obligation to coordinate with firefighters, Defendant did not share any of this information with Plaintiffs.

{36} Given the nature of Defendant's relationship to Plaintiffs, we find that these facts show Defendant's conduct could be considered extreme and outrageous. We are aware of no cases where a firefighter's claim for intentional infliction of emotional distress has been decided on the merits, and thus find little guidance in the precedent of either New Mexico or other jurisdictions. Instead, we look for circumstances that indicate an "abuse by the defendant of a relationship with the plaintiff," *M.B.M. Co.*, 596 S.W.2d at 688, or a "disregard for the plaintiff[ ] . . . under particularly trying circumstances." *Rockhill*, 485 P.2d at 32. The allegations that Defendant knew about the specific risks inherent in failing to maintain its pipelines, and that Plaintiffs would be exposed to those risks, if proven could support a finding of such abuse or disregard.

{37} Plaintiffs must also show that Defendant's conduct was intentional or in reckless disregard of Plaintiffs.[5] Recklessness is " 'the intentional doing of an act with utter indifference to the consequences.' " *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001–NMCA–082, ¶ 59, 131 N.M. 100, 33 P.3d 651 (quoting UJI 13–1827 NMRA); *see also Restatement (Second) of Torts* § 46 cmt.

---

**5.** We are aware that firefighters are necessarily subjected to emotional distress every time they respond to an emergency. Supervisors therefore necessarily and knowingly send firefighters into a situation where they will suffer injuries. These actions, however, do not expose supervisors to liability for intentional infliction of emotional distress. In *Delgado v. Phelps Dodge Chino, Inc.*, 2001–NMSC–034, ¶ 26, 131 N.M. 272, 34 P.3d 1148, we noted that when an "employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker[,]" then the employer could be liable for the worker's injury. We specifically recognized, however, that firefighters and police fall under the "just cause or excuse" exception. *Id.* ¶ 27.

i (defining recklessness as "deliberate disregard of a high degree of probability that the emotional distress will follow"). The prior explosions with injuries, and Defendant's failure to remedy the problems with its pipelines, could show recklessness. *See Gonzales v. Surgidev Corp.*, 120 N.M. 133, 147, 899 P.2d 576, 590 (1995) (finding that prior acts are relevant to recklessness, and failure to remove defective products from the market "demonstrate[s] a reckless disregard for the safety" of others).

{38} Finally, Plaintiffs must show that their mental distress is extreme and severe, and that there is a causal connection between Defendant's conduct and Plaintiffs' mental distress. As we discussed under our analysis of the firefighter's rule, *supra*, Plaintiffs have alleged sufficient facts to show that their distress is severe. That stress arose from witnessing the physical injuries to the victims, injuries caused by Defendant's failure to maintain the pipeline at issue.

{39} Plaintiffs have thus alleged sufficient facts to support each element of a claim of intentional infliction of emotional distress. These facts allow Plaintiffs' claim to survive Defendant's Rule 1–012(B)(6) motion, but Plaintiffs must still prove their case. In evaluating the outrageousness of Defendant's conduct and the severity of Plaintiffs' distress, we must remember that emotional distress is part of a firefighter's job; what might be outrageous conduct or severe distress to a typical member of the public may just be part of an ordinary day to a firefighter.

### 2. Third–Party Claim

{40} It is tempting to analyze this case under the second prong of the *Restatement* test, as Defendant would have us do. The second prong covers situations where the defendant's conduct is directed at a third person, and observation of the third person's injuries causes the plaintiff's emotional distress. *Restatement (Second) of Torts* § 46, cmt. l. In this case, Plaintiffs allege that their mental distress arose from observing the injuries to the victims caused by Defendant's failure to properly maintain the pipeline at issue. However, as we discussed in our anal-

ysis of Plaintiffs' first-party claim, the extreme and outrageous nature of Defendant's conduct arises if there is a special relationship between Defendant and Plaintiffs. It is the possibility of a special relationship that permits Plaintiffs' claim under the elements defined in *Trujillo*. Therefore, we do not need to reach Defendant's argument that Plaintiffs' claim is legally insufficient as a third-party claim.

### III. CONCLUSION

{41} The firefighter's rule has a place in New Mexico law, but as a matter of public policy it does not cover injuries arising out of intentional acts and certain reckless acts. Under our reformulation of the firefighter's rule, Plaintiffs' complaint alleges legally sufficient facts to support a first-party claim of intentional infliction of emotional distress. We remand this case to the district court for further proceedings consistent with this opinion.

{42} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, and PAUL J. KENNEDY (Pro Tem), Justices.