******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBERT SEPEGA *v.* LAWRENCE R. DELAURA
## (SC 19683)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Espinosa, Robinson and Vertefeuille, Js.*

*Syllabus*

The plaintiff, a municipal police officer, brought a negligence action seeking
to recover damages for certain personal injuries that he sustained while
attempting to force entry into the defendant's home. Specifically, the
plaintiff alleged that the defendant had entered the home in violation
of a protective order, locked himself inside, and threatened to cause
harm to himself. The plaintiff further alleged that, through these acts, the
defendant had negligently created conditions that required the plaintiff
to forcibly enter the home. The defendant filed a motion to strike the
complaint pursuant to the common-law firefighter's rule, which generally
bars firefighters and police officers who enter private property in the
exercise of their duties from bringing civil actions against the landowner
for injuries caused by defective conditions on the property. The trial
court granted the defendant's motion, concluding that the plaintiff's
claim was barred by the firefighter's rule. The trial court subsequently
rendered judgment for the defendant, from which the plaintiff appealed.
*Held* that the trial court improperly granted the defendant's motion to
strike the plaintiff's claim of ordinary negligence, this court having
concluded that the firefighter's rule should not be extended beyond
claims alleging premises liability: the various public policy considera-
tions underlying the firefighter's rule did not support the expansion of
that rule to claims of ordinary negligence in light of this state's statutory
(§ 52-572h [*l*]) abolition of the assumption of risk doctrine, the fact that
other public sector employees may pursue recovery in similar cases, and
the absence of any evidence of a chilling effect on calls for emergency
assistance; moreover, the defendant's assertion that *Kaminski* v. *Fair-
field* (216 Conn. 29) supports barring negligence claims by public safety
officers was foreclosed by this court's subsequent decision in *Levan-
doski* v. *Cone* (267 Conn. 651), which explicitly declined to extend the
firefighter's rule beyond the context of premises liability.

(*Three justices concurring separately in one opinion*)

Argued February 22—officially released September 26, 2017

*Procedural History*

Action to recover damages for the defendant's alleged
negligence, brought to the Superior Court in the judicial
district of Middlesex, where the defendant filed a
motion to strike the plaintiff's complaint; thereafter,
the court, *Aurigemma, J.*, granted a motion to intervene
filed by the town of Clinton; subsequently, the court,
*Vitale, J.*, granted the motion to strike, and the court,
*Aurigemma, J.*, granted the defendant's motion for
judgment and rendered judgment thereon, from which
the plaintiff appealed. *Reversed*; *further proceedings*.

*Gerald S. Sack*, with whom, on the brief, was *Jona-
than A. Cantor*, for the appellant (plaintiff).

*Keith S. McCabe*, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The common-law firefighter's rule provides, in general terms, that a firefighter or police officer who enters private property in the exercise of his or her duties generally cannot bring a civil action against the property owner for injuries sustained as the result of a defect in the premises. See *Levandoski* v. *Cone*, 267 Conn. 651, 653–54, 841 A.2d 208 (2004). The principal issue in this appeal is whether the firefighter's rule should be extended beyond the scope of premises liability so as to bar a police officer from recovering, under a theory of ordinary negligence, from a homeowner who is also an alleged active tortfeasor. The plaintiff, Robert Sepega,[1] a municipal police officer, appeals from the judgment of the trial court in favor of the defendant, Lawrence R. DeLaura, following the granting of a motion to strike. In granting that motion, the trial court concluded that the firefighter's rule barred the plaintiff's sole claim, which sounded in ordinary negligence. We conclude that the firefighter's rule should not be extended beyond claims of premises liability and, accordingly, reverse the judgment of the trial court in favor of the defendant and remand the case to the trial court for further proceedings.

The following facts, as alleged by the plaintiff in his amended complaint, and procedural history are relevant to the present appeal. The plaintiff, while in the course of his employment as a municipal police officer, responded to a call at a premises owned by the defendant. The call indicated that the defendant had locked himself inside his home and was threatening to harm himself. After arriving at the premises and making numerous requests of the defendant for entry into the home, the plaintiff ultimately attempted to kick in a door and, in doing so, sustained serious injuries. The plaintiff alleged that the resulting damages were caused by the negligence and carelessness of the defendant. Specifically, the plaintiff alleged that the defendant had negligently "created conditions which mandated that the plaintiff, as a police officer, forcibly enter the premises in order to prevent harm to the defendant or to others." In support of this claim, the plaintiff alleged that the defendant "had violated a protective order by entering and remaining in the premises," was "threatening to harm himself," and was "uncooperative with police requests to come to the door and speak to them." We note that the complaint does not make any allegations against the defendant relating to dangerous or defective conditions on the premises.

The defendant filed a motion to strike the amended complaint, and the plaintiff objected. On September 15, 2015, the trial court issued a memorandum of decision denying the defendant's motion to strike. Thereafter, the defendant filed a motion for articulation that the court, sua sponte, recast as a motion for reargument

and reconsideration. After hearing argument from the parties, the trial court vacated its original decision and issued a new memorandum of decision granting the defendant's motion to strike on October 29, 2015. The defendant then filed a motion for judgment, which the trial court granted. This appeal followed.[2]

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 398, 142 A.3d 227 (2016); see also *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 350, 71 A.3d 480 (2013). "The issue of whether to recognize a common-law cause of action in negligence is a matter of policy for the court to determine based on the changing attitudes and needs of society." *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003). We note that, because the firefighter's rule is rooted in the common law, it "is subject to both legislative and judicial modification." *Ascuitto* v. *Farricielli*, 244 Conn. 692, 698, 711 A.2d 708 (1998). We also note that, "because the firefighter's rule is an exception to the general rule of tort liability that, as between an innocent party and a negligent party, any loss should be borne by the negligent party, the burden of persuasion is on the party who seeks to extend the exception beyond its traditional boundaries." *Levandoski* v. *Cone*, supra, 267 Conn. 661.

On appeal to this court, the plaintiff asserts that the trial court incorrectly granted the motion to strike because his claim is not barred by the firefighter's rule. Specifically, the plaintiff asserts that his claim is controlled by this court's decision in *Levandoski* v. *Cone*, supra, 267 Conn. 654, in which the firefighter's rule was limited to claims of premises liability. In response, the defendant claims that the trial court correctly granted his motion to strike because this case is distinguishable from *Levandoski*. Instead, the defendant asserts that *Kaminski* v. *Fairfield*, 216 Conn. 29, 578 A.2d 1098

(1990), governs the plaintiff's claim. We agree with the plaintiff.

In *Kaminski*, this court considered whether parents could be held liable for injuries that a police officer received when accompanying mental health workers to a home in response to a request for mental health assistance to control the behavior of an adult son. Id., 30. The injured police officer relied on the following two theories of liability in support of his claim: (1) the parents owed him a duty of care pursuant to § 319 of the Restatement (Second) of Torts because, in permitting their adult schizophrenic son to live with them, they undertook a custodial relationship that encompassed responsibility for controlling his behavior; and (2) the parents were negligent in failing to warn the police officer of the son's dangerous and violent propensities, and that he possessed several axes. Id., 33–36. This court rejected the police officer's first claim, holding that the parents did not owe the police officer a duty of care because, in permitting their adult schizophrenic son to live with them, they had not undertaken a custodial relationship that encompassed responsibility for controlling his behavior. Id., 36. In rejecting the police officer's reliance on *Tarasoff* v. *Regents of University of California*, 17 Cal. 3d 425, 551 P. 2d 334, 131 Cal. Rptr. 14 (1976), this court further concluded that the parents were not negligent in failing to warn the police officer of their son's dangerous and violent propensities, and that he possessed several axes, because the parents did not have a professional relationship with their son and because the police officer was not a specifically identifiable victim. *Kaminski* v. *Fairfield*, supra, 216 Conn. 37. This court explained that the parents "cannot be held liable [to the police officer, who was] acting as a trained escort for a mental health team on a visit to a disturbed patient known to be agitated and to have access to axes." Id., 38.[3]

In *Levandoski*, a police officer brought a claim against a suspect for injuries he sustained during a pursuit. *Levandoski* v. *Cone*, supra, 267 Conn. 654–56. The issue before this court in that case was "whether the firefighter's rule should be extended beyond the scope of premises liability so as to bar a police officer from recovering, based on a claim of ordinary negligence, from a tortfeasor who is neither an owner nor a person in control of the premises." Id., 654. This court held that the firefighter's rule "should not be extended to a nonpremises liability case . . . ." Id., 661. In reaching this conclusion, we noted that, "[b]ecause the firefighter's rule is an exception to the general rule of tort liability that, as between an innocent party and a negligent party, any loss should be borne by the negligent party, the burden of persuasion is on the party who seeks to extend the exception beyond its traditional boundaries," and that "the history of and rationales for the [firefighter's] rule persuade us . . . that it should

be confined to claims of premises liability." Id. In addition, after briefly discussing *Kaminski*, this court limited the breadth and scope of that case by concluding that, "we agree with those jurisdictions that have framed the [firefighter's] rule as one that relates specifically to premises liability . . . ." Id., 664.

In *Levandoski*, we explained the history of the firefighter's rule in this state as follows: "This court first applied the firefighter's rule in *Roberts* v. *Rosenblatt*, 146 Conn. 110, 148 A.2d 142 (1959). In that case, the plaintiff firefighter, who had responded to an alarm, sought to recover from the defendant landowners based upon the defendants' negligent maintenance of their property. . . . The trial court declined the defendants' request to charge the jury, as a matter of law, that the plaintiff was a licensee upon the defendant's property and that the duty which the defendants owed to the plaintiff was limited by that relationship. . . . This court stated: Upon these facts, the court should have instructed the jury as a matter of law that the plaintiff entered upon the premises in the performance of a public duty under a permission created by law and that his status was akin to that of a licensee and the defendants owed him no greater duty than that due a licensee. . . .[4]

"In *Furstein* v. *Hill*, [218 Conn. 610, 590 A.2d 939 (1991)], we considered whether to extend the firefighter's rule to a police officer. We phrased the issue as whether a police officer occupies the status of an invitee or of a licensee when, in the course of performing his official duties, he is injured by a defective condition on the property of a landowner. We read *Roberts* as [adopting] the principle expressed in the Restatement (Second) of Torts, § 345 (1), that the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee. . . . We concluded that the rule applies to police officers as well as firefighters. . . . In doing so, we gave three reasons for extending the rule to police officers. . . .

"The first reason was cast in terms of the similarity of the roles of firefighters and police officers, and the reasonable expectations of landowners regarding those two types of public officers. . . . The second reason was essentially a reiteration of the doctrine of assumption of the risk. . . . The third reason rested upon the combination of the avoidance of double taxation upon landowners and the availability of workers' compensation benefits to compensate the injured firefighter or police officer." (Citations omitted; footnote added; internal quotation marks omitted.) *Levandoski* v. *Cone*, supra, 267 Conn. 658–61.

In *Levandoski*, this court concluded that "[t]his background persuades us that the rule should not be

extended to a nonpremises liability case, such as the present appeal. Because the firefighter's rule is an exception to the general rule of tort liability that, as between an innocent party and a negligent party, any loss should be borne by the negligent party, the burden of persuasion is on the party who seeks to extend the exception beyond its traditional boundaries. The history of and rationales for the rule persuade us, however, that it should be confined to claims of premises liability." Id., 661.[5]

On appeal to this court, the defendant asserts that *Levandoski* can be distinguished on the ground that, unlike the present case, the cause of action in *Levandoski* was not against a homeowner. *Levandoski* v. *Cone*, supra, 267 Conn. 654–56. The defendant contends that *Kaminski* was not overruled by *Levandoski* and that *Kaminski* did not present a claim sounding in premises liability. *Kaminski* v. *Fairfield*, supra, 216 Conn. 37. We are not persuaded. Our statements subsequent to *Kaminski* indicate the firefighter's rule should be limited to claims of premises liability. *Kaminski* may be distinguished because it was a claim of vicarious liability, in that the parents in that case did not cause the damage to the police officer, and they could not be held liable for the actions of their adult son. Id., 36–37. We also note that the decision in *Levandoski* came fourteen years after the decision in *Kaminski*, yet this court still expressly limited the firefighter's rule to premises liability cases.[6]

The plaintiff contends that the public policy considerations often cited for the firefighter's rule not only do not justify expanding the applicability of the rule to general negligence claims, but they also suggest the rule should be abolished or limited to premises liability claims. In response, the defendant claims that, although the firefighter's rule essentially began as a rule of premises liability, "that basis has frequently been abandoned as jurisdictions have moved away from archaic categorizations such as licensee and invitee." See *England* v. *Tasker*, 129 N.H. 467, 469, 529 A.2d 938 (1987) ("[t]his basis for the rule is currently without justification, given the modern rejection of the licensee-invitee distinction in New Hampshire"); see also *Berko* v. *Freda*, 93 N.J. 81, 85, 459 A.2d 663 (1983) ("the formalistic classification of invitees, licensees and trespassers no longer forms the basis of the rule"). The defendant next asserts that "the majority of jurisdictions that have established the firefighter's rule have extended [it] to nonpremises liability [cases] . . . ." The defendant further asserts that *Levandoski* did not overrule *Kaminski*, and that *Levandoski* does not apply to the present case because *Levandoski* did not involve an action against a landowner. The defendant argues that *Kaminski* is more on point because, in that case, this court did not allow an action by a police officer alleging a nonpremises liability claim against a landowner. He further maintains that the claim

in the present case should not be allowed because the injury occurred as part of the plaintiff's duties as a police officer.

"The most often cited policy considerations [in support of the firefighter's rule] include: (1) [t]o avoid placing too heavy a burden on premises owners to keep their premises safe from the unpredictable entrance of fire fighters; (2) [t]o spread the risk of . . . injuries to the public through workers' compensation, salary and fringe benefits; (3) [t]o encourage the public to call for professional help and not to rely on self-help in emergency situations; and (4) [t]o avoid increased litigation." *Christensen* v. *Murphy*, 296 Or. 610, 619, 678 P.2d 1210 (1984). Proponents also cite "double taxation" as another policy consideration in favor of the firefighter's rule. *Levandoski* v. *Cone*, supra, 267 Conn. 660–61. We consider each of these policy considerations in turn.

By focusing on a firefighter or police officer as a class from whom a premises owner needs immunity from liability, not on the reasonableness of the activity of the premises owner in the circumstances, the first policy consideration operates as a veiled form of an assumption of risk analysis. This legislature of this state, however, has abolished the assumption of risk doctrine. See General Statutes § 52-572h (*l*);[7] see also *Levandoski* v. *Cone*, supra, 267 Conn. 662–63. As a result, this policy consideration fails to support an extension of firefighter's rule in the present case.

The defendant asserts that we should recognize a difference between a "primary" assumption of risk, which arises from the "special relationship between the firefighter and the public," and a "secondary" assumption of risk, which arises from an individual firefighter's decision to encounter a particular risk. The defendant argues that, while Connecticut may have abolished the latter, it did not abolish the reasoning underlying the former. Thus, the defendant argues that a firefighter may assume a risk, in the broader sense, when that risk is inherent to his or her occupation. We are not persuaded. There is no indication in § 52-572h (*l*) that the legislature intended to differentiate between degrees of assumption of risk. The doctrine was abolished in its entirety. It would be both unfair and incongruous, therefore, for this court to rely on the assumption of risk doctrine as a basis for extending the firefighter's rule beyond premises liability claims when the clear public policy of our state is contrary to the very rationale for that doctrine. Regardless of the continuing vitality of the firefighter's rule as it relates to premises liability claims, it certainly should not be extended on the basis of the common-law doctrine of assumption of risk.[8]

Furthermore, as this court explained in *Levandoski*, "the firefighter's rule is essentially a rule of premises liability. The distinction upon which it rests, namely,

whether the plaintiff is an invitee or licensee, is itself a distinction that exists in our law only with regard to claims based upon premises liability, and the differing duties of care that emanate from those distinctions are cast in terms of a landowner's duty to persons on his or her land. We have recognized that the rule is directly applicable [to] an issue of landowner liability . . . . We have declined to extend the rule to a case in which the plaintiff firefighters sought to recover damages from the defendant alarm company for injuries and death sustained as a result of a collision caused by the negligent maintenance and failure of brakes on their fire engine while responding to a false alarm transmitted by the defendant. . . . This essential link to a landowner's liability, as we [have previously] explained . . . is the most compelling argument for the rule, because of the reasonable expectations of landowners, and because of the ensuing hardship that would be visited upon a landowner in the absence of the rule. Indeed, we have reiterated that this is [t]he most compelling argument for the continuing validity of the rule . . . . This argument simply does not apply if the defendant is not a landowner. Indeed, neither the differing status of the plaintiff nor the reasonable expectations of the defendant are relevant if the plaintiff is not engaged in entering the land of the defendant. It would be anomalous, therefore, to extend the rule to a case in which the most compelling argument for the rule is inapplicable." (Citations omitted; internal quotation marks omitted.) *Levandoski* v. *Cone*, supra, 267 Conn. 661–62.

Indeed, in *Levandoski*, this court explained that "to the extent that the firefighter's rule rests on the doctrine of assumption of the risk, it would be inconsistent with the policy of our general tort law to extend the rule beyond its present confines. That policy is expressed in . . . § 52-572h, pursuant to which the legislature has abolished the doctrine of assumption of the risk in negligence actions. Section 52-572h (*l*) provides: 'The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished.' Subsection (b) of § 52-572h makes the statute applicable to 'causes of action based on negligence . . . .' The present action is '[a cause] of action based on negligence . . . .' " (Footnote omitted.) Id., 662–63.

We next turn to the claim that the firefighter's rule is supported because it spreads the risk of firefighter's injuries to the public through workers' compensation, salary and fringe benefits. As the Supreme Court of Oregon explained, "[t]he weakness in the loss-spreading rationale . . . is obvious. By denying a public safety officer recovery from a negligent tortfeasor, the officer is not directed to recover his damages from the general public; rather the officer is totally precluded from recovering these damages from anyone. Contrast this with other public employees who are injured when confronting dangers on their jobs. The latter can recover work-

ers' compensation and salary benefits from the public, but are also allowed additional tort damages from the third-party [tortfeasors]." *Christensen* v. *Murphy*, supra, 296 Or. 620. For instance, either the municipal emergency medical technician, injured due to a homeowner's negligence in the maintenance of his property while transporting a patient, or the municipal building inspector, injured due to homeowner's negligence while examining structures, is able to bring civil actions against defendants who may be responsible for his or her injuries. However, "[u]nder the [firefighter's] rule the injured public safety officer must bear a loss which other public employees are not required to bear." Id. Expanding such a rule would unnecessarily and improperly discriminate against public safety officers. While there is certainly danger inherent in the job of being a police officer or a firefighter, it is interesting to note that, in terms of the most dangerous public sector jobs, refuse and recyclable collectors were ranked as having the fifth most dangerous overall job in the United States in 2015, ahead of both firefighters and police officers. United States Dept. of Labor, "National Census of Fatal Occupational Injuries in 2015" (2016) p. 4, available at https://www.bls.gov/news.release/pdf/cfoi.pdf (last visited September 13, 2017). Despite these statistics, we do not have a similar rule for refuse and recyclable collectors. Instead, a refuse and recyclable collector may bring a civil action against third-party tortfeasors responsible for his or her injuries if he or she is injured on someone's property.[9] If one of the foundations underlying the firefighter's rule is that the job of police officers and firefighters are so inherently dangerous that danger and injury are part of the job, it hardly seems justified to extend the rule when statistically there are more dangerous public sector jobs in which we allow the injured worker to pursue recovery from a third-party. See S. Maloney, United States Dept.ofLabor, "Nonfatal Injuries and Illnesses Among State andLocal Government Workers" (2014) p. 8, available at https://www.bls.gov/spotlight/2014/soii-gov-workers/home.htm (last visited September 13, 2017) (for state and local employees, nursing and residential care workershave highest rate of nonfatal injuries).

The defendant claims that the firefighter's rule is also justified because police officers and firefighters receive extra benefits as a result of their employment. We disagree. While there may be certain additional benefits negotiated with municipalities as the result of union collective bargaining, we cannot discern any statute in which the legislature has provided extra compensation to police officers or firefighters as a result of their employment.[10]

The proponents of the firefighter's rule claim that it encourages the public to call for professional help and not to rely on self-help in emergency situations. This rationale has been criticized by one legal scholar, Wil-

liam L. Prosser, as "preposterous rubbish." W. Prosser, Law of Torts (4th Ed. 1971) § 61, p. 397. Indeed, we conclude that, in an emergency situation, it is unlikely any person would be hesitant to call for help because they are concerned about liability for potential injuries to public safety personnel.

We note that the concurrence disagrees with this conclusion. Although a majority of jurisdictions employ the firefighter's rule, there are many that do not.[11] In total, eighteen states have abolished the firefighter's rule, severely limited its application, or have not addressed it at all.[12] See *Apodaca* v. *Willmore*, 306 Kan. 103, 114, 392 P.3d 529 (2017). We have not been able to find, and the concurrence does not point to, any evidence that there has been an effect on the residents in these eighteen states that deters them from calling for emergency assistance. Moreover, we cannot find, and the concurrence does not point to, any evidence of any significant detriment to society in those states that have never adopted the rule. See generally *Holmes* v. *Adams Marine Center*, Docket No. CV-99-239, 2000 WL 33675369 (Me. Super. July 17, 2000).[13]

Although the concurrence correctly states that we provide no evidence to support our agreement with Prosser, this is because there is no significant evidence for, or against, Prosser's statement. Other jurisdictions have either agreed with his characterization; *Christensen* v. *Murphy*, supra, 296 Or. 620; or disagreed with it; *Fordham* v. *Oldroyd*, 171 P.3d 411, 413 (Utah 2007). No jurisdiction appears to have analyzed whether the absence of the firefighter's rule actually *does* deter people from calling for emergency assistance. The concurrence also fails to rebut our approval of Prosser's statement by pointing to any evidence to demonstrate that the "chilling" effect on citizens has occurred anywhere else in the nation where the firefighter's rule has been abolished or limited. It is important to note that the firefighter's rule presently allows a police officer or firefighter to bring claims for negligence that do not involve premises liability. It is not a rule of absolute liability for injuries to firefighters or police officers who suffer an injury at a homeowner's residence due to the negligence of the homeowner. If an injury is suffered without negligence, the action is covered by workers' compensation. We note that even the concurrence would allow an action by a firefighter or police officer against a homeowner for negligence that occurred after the police officer or firefighter arrived. We suggest that most cases, as exhibited by the fact pattern in the present case, would fall into that category. The concurrence would also allow an action, like the present case, against a third party who was not involved in contacting the police. It is simply inconceivable to us that someone whose house is on fire will debate or hesitate in calling the fire department because he or she fears a firefighter might bring some negligence action if injury occurs.

Instead, we presume that the primary concern of a person whose house is on fire would be to act to protect the health and safety of the people in the home and to salvage the property.

The concurrence relies on *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), to support its contention that this court has previously relied on this policy rationale to support the firefighter's rule. We disagree. As this court explained in its opinion, *Lodge* did not involve the application of the firefighter's rule. Specifically, this court explained as follows: "In *Furstein*, we analyzed the firefighter rule, which gives a firefighter the status of a licensee in a personal injury action against a landowner for harm sustained during the course of duty. *Furstein* v. *Hill*, supra, 218 Conn. 615–16 . . . . The firefighter rule is not directly applicable in this case because this is not an issue of landowner liability, and we decline to extend the rule to the present situation. Its rationale is, however, instructive for understanding the policy issues relevant to compensation of firefighters injured in the line of duty. We concluded that limited liability was appropriate in *Furstein* . . . and *Roberts* . . . because (1) the nature of a firefighter's work is inherently hazardous and the choice of that occupation is akin to assumption of the risk, and (2) firefighters are adequately compensated for the job they perform and are able to recover workers' compensation for injuries sustained in the course of their employment. . . . Both of these public policy considerations are equally relevant to the question of whether, as a matter of policy, the defendants should be liable for the unforeseen consequences of their negligent transmission of a false alarm." (Citations omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 580–81 n.12. Accordingly, we conclude that the well reasoned analysis of *Levandoski*, not *Lodge*, is central to whether to apply the firefighter's rule in the present case. Furthermore, even in *Lodge*, we acknowledged that this court declines to extend the firefighter's rule beyond landowner liability. Id., 580 n.12.

In *Lodge*, firefighters were responding to a fire alarm, which was in reality a false alarm, and the fire engine's brakes were defective. Id., 566–70. The defective brakes caused an accident, which injured and killed firefighters. Id. This court mentioned the public policy arguments in support of the firefighter's rule in one paragraph, but it was not the primary rationale behind the conclusion in *Lodge*. Id., 579–81. This court reasoned that imposing liability on the alarm company would be too far removed from the harm incurred. Id., 582–84. The concern of having a "chilling" effect on alarm companies is fully justified in the circumstances of *Lodge*. Specifically, if this court had allowed a claim to proceed against the alarm company in Lodge, it would have forced alarm companies to be responsible for monitoring and maintaining the brakes of emer-

gency response vehicles to ensure they would not crash. Such a result would be absurd and would threaten the viability of fire alarm companies. Id., 584–85. This court was not referring to the "chilling" effect upon society in regard to calling for help if a negligent resident could be held liable for *directly* harming emergency responders, but specifically stated that the decision was based on liability "for those consequences that are not reasonably foreseeable, but, rather, are significantly attenuated from the original negligent conduct . . . ." Id., 584. In circumstances where there is a direct causal relation between the tortfeasor and the harm suffered by the claimant, like the present case, *Lodge* is not persuasive and does not support the position of the defendant as the concurrence suggests.

The concern that limiting the firefighter's rule will result in increased litigation is also not persuasive. As this court has recognized in other contexts, "rather than unnecessarily and unwisely increasing litigation, imposing a duty in this case will likely prompt [people] to act more responsibly . . . in the interest of preventing foreseeable harm . . . ." *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 340, 107 A.3d 381 (2015). This is consistent with "the general tort policy of deterring similar tortfeasors from wrongful conduct." *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 23, 699 A.2d 964 (1997). This is also consistent with "the general rule of tort liability that, as between an innocent party and a negligent party, any loss should be borne by the negligent party . . . ." *Levandoski* v. *Cone*, supra, 267 Conn. 661.

Finally, we are not persuaded by the rationale that the firefighter's rule helps to avoid double taxation. This assertion has its genesis in the expectation that "the public should [and does] compensate its safety officers both in pay that reflects the hazard of their work and in workers' compensation benefits for injuries suffered when the risks inherent in the occupation materialize." *Furstein* v. *Hill*, supra, 218 Conn. 619. We reject this argument as contrary to the clear public policy of General Statutes § 31-293, that "the third party tortfeasor, and not the employer, shall be primarily responsible for bearing the economic loss resulting from the tortfeasor's negligence." *Cruz* v. *Montanez*, 294 Conn. 357, 383, 984 A.2d 705 (2009); see also, e.g., *Dodd* v. *Middlessex Mutual Assurance Co.*, 242 Conn. 375, 384, 698 A.2d 859 (1997) ("[b]y allowing the employer to take action in order to recover the workers' compensation benefits it was legally obligated to pay to its injured employee, the act ensure[s] that, as in an action in tort, the ultimate loss [falls on] the wrongdoer"). All or virtually all of the towns and cities in Connecticut self-administer their workers' compensation insurance plans. As a result, taxpayers' money is spent when an injured police officer undergoes medical treatment and receives indemnity benefits through

workers' compensation. An injured police officer who is precluded from bringing a claim against a negligent third party would frustrate the legislative intent and public policy set forth in § 31-293 because the taxpayers, through the municipality, would be unable to recoup the money they spent on the workers' compensation claim of the injured police officer.

As this court explained in *Levandoski*, "to the extent that the firefighter's rule rests on the avoidance of double taxation of the landowner and the presence of workers' compensation benefits for the injured firefighter or police officer, the rationale does not apply to the present case. The defendant is not a taxpayer, as is a landowner who pays taxes on his or her property. Of course, although in any given case a negligent tortfeasor who injures a firefighter or police officer may also pay taxes to the local municipality, that fact would be wholly fortuitous. The point of the rule, however, is that the landowner who owes a lesser degree of duty to the police officer who enters his or her land has that benefit because, as a landowner, he or she also indirectly pays the salary of the officer through property taxes. Furthermore, we are not persuaded that, simply because the firefighter or police officer has recourse to workers' compensation benefits, he or she should not also be able to recover from a third party based on negligence. We do not ordinarily put such an elevated burden on recovery where, for example, the third party is a product manufacturer, and we see no persuasive reason to do so in the context of the present case. In addition, as the present case indicates, permitting the plaintiff to recover for the defendant's negligence will tend to reduce workers' compensation costs by permitting the plaintiff's employer to recoup those benefits." *Levandoski* v. *Cone*, supra, 267 Conn. 663–64.

Further, we recognize that most homeowners are insured against the risk of people being injured on their property due to the fault of the homeowner. The homeowner is able to insure against such a risk. Therefore, it hardly constitutes double taxation when a homeowner's insurance carrier must pay money to a person injured on the homeowner's property due to the homeowner's negligence. Given these facts, public policy considerations strongly suggest that the firefighter's rule should be, at the very least, limited to premises liability claims.[14] Although the defendant points to several jurisdictions that have extended the firefighter's rule beyond premises liability claims, we note that some of those jurisdictions have not specifically rejected the doctrine of assumption of risk as the legislature has in Connecticut. Further, we are persuaded by the reasoning of those cases that have either refused to adopt the firefighter's rule at all or limited it to premises liability. See *Thompson* v. *FMC Corp.*, 710 So. 2d 1270, 1271 (Ala. Civ. App. 1998) (not adopted); *Bath Excavating & Construction Co.* v. *Wills*, 847 P.2d 1141, 1146 (Colo. 1993) (declining

to adopt); *Holmes* v. *Adams Marine Center*, supra, 2000 WL 33675369 (noting that Maine has declined to adopt); *Hopkins* v. *Medeiros*, 48 Mass. App. 600, 608–609, 724 N.E.2d 336 (2000) (declining to adopt); *Christensen* v. *Murphy*, supra, 296 Or. 620 (abolished); *Minnich* v. *Med-Waste, Inc.*, 349 S.C. 567, 575, 564 S.E.2d 98 (2002) (declining to adopt).

Accordingly, we are persuaded by the plaintiff's argument that the present case is controlled by *Levandoski*. To the extent that the defendant asserts that *Kaminski* supports barring negligence claims against third parties by public safety officers, we conclude that assertion is foreclosed by *Levandoski*. As we stated in *Levandoski* "[w]e disagree with the defendant's suggestion that we ought to extend the firefighter's rule beyond situations in which the plaintiff is injured while on the defendant's land; instead, we agree with those jurisdictions that have framed the rule as one that relates specifically to premises liability and defines the duty owed *by an owner or occupier of land*." (Emphasis in original.) *Levandoski* v. *Cone*, supra, 267 Conn. 664. We have examined the policy considerations that served as the foundation for *Levandoski*, together with the additional arguments presented by counsel in the present case. We note that, because the defendant is urging us to expand a common-law rule on the basis of public policy considerations, the burden is on him to persuade us that the rule should be so extended. We declined to extend the firefighter's rule in *Levandoski*. Likewise, we conclude that the defendant has failed to convince us that the firefighter's rule should be expanded in the present case. Although the distinctions that existed at common law when the firefighter's rule was first developed—namely, the distinction between a licensee and an invitee—no longer appear to be used by many jurisdictions, the other policy considerations remain valid.[15] In the present case, the plaintiff did not make any claim that his injuries were caused by a defect in the premises. Therefore, we conclude that the trial court improperly granted the defendant's motion to strike.[16]

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion ROGERS, C. J., and ESPINOSA and VERTEFEUILLE, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] We note that Sepega's employer, the town of Clinton, was granted permission by the trial court to intervene as a plaintiff in the present case. For the sake of simplicity, however, we refer to Sepega as the plaintiff in this opinion.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] We emphasize that *Kaminski* (1) involved a police officer, (2) was decided before the firefighter's rule was extended to police officers, and (3) did not involve the application of the firefighter's rule at all, but instead involved the duty to warn a third party about a mentally ill person's propensity for violence. *Kaminski* v. *Fairfield*, supra, 216 Conn. 30. The concurrence relies upon dictum in *Kaminski* for the proposition that the

firefighter's rule is grounded in a public policy of not discouraging citizens from calling the police when needed. It is interesting to note that, one year after our decision in *Kaminski*, this court noted that "the firefighter's rule adopted by this court . . . applies to police officers who are injured by defective conditions on private property while the officers are present upon such property in the performance of their duties." *Furstein* v. *Hill*, 218 Conn. 610, 620, 590 A.2d 939 (1991).

[4] *Levandoski*, therefore, correctly identified the public policy principles underlying the firefighter's rule as, unsurprisingly, being rooted in the law of premises liability, because the firefighter's rule arose in that context in Connecticut. *Levandoski* v. *Cone*, supra, 267 Conn. 661–62. The concurrence fails to address the "most compelling" principle, as explained in *Levandoski*, which is that firefighters and police are licensees rather than invitees. Id., 662. Once their duty as public servants is triggered, a landowner's or occupier's consent is irrelevant to their power to enter land. In fact, once that duty is triggered, an owner or occupier cannot exclude them from entering. Therefore, it would be unreasonable to impose a duty on owners or occupiers to keep their premises free from defects, especially since such entries can occur at any time of day or night. Imposition of that duty would require owners and occupiers to keep the premises free of defect constantly. Id. The concurrence instead focuses on two principles that *Levandoski* considered less compelling—double taxation and assumption of risk. Id., 662–63. The concurrence then criticizes *Levandoski*'s reliance on these principles. By suggesting that these are the primary public policy principles underlying this court's decision in *Levandoski*, the concurrence sets up a straw man. We again emphasize that the holding in *Levandoski*—that the firefighter's rule should not be extended beyond the context of premises liability—is not dictum. That was the precise issue this court identified as being presented on appeal. It was also the issue that was argued by the parties in that case. There is, therefore, simply no basis for characterizing the holding of this court in *Levandoski* as dictum.

[5] The concurrence asserts that *Levandoski* "stand[s] only for the limited proposition that none of the public policies supporting the firefighter's rule precludes the imposition of a duty of care on suspected criminals who are fleeing or resisting a police officer" and that "much of *Levandoski*, echoed by the majority in the present case, constitutes legally flawed dictum that undercuts the duty analyses in *Kaminski* . . . and *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), which are based substantially on the well established public policies that support the firefighter's rule, especially that of encouraging our citizens to call for professional help in emergencies without fear of civil liability." The concurrence further asserts that "[l]egislative action, as in some of our sister states, would be ideal for making the appropriate findings and articulating the contours of Connecticut's firefighter's rule. . . . Nevertheless, until such time as our legislature can act, I would adopt a formulation of the firefighter's rule as a matter of common law that encourages citizens to seek help in emergencies, while not slamming the courthouse door to appropriate claims of our first responders." (Footnote omitted.) We disagree.

First, as a unanimous panel of this court explained in *Levandoski*, "[t]he principal issue in [that case was] whether the firefighter's rule should be extended beyond the scope of premises liability so as to bar a police officer from recovering, based on a claim of ordinary negligence, from a tortfeasor who is neither an owner nor a person in control of the premises. The defendant, who is not a landowner or person in control of land, appeals from the judgment of the trial court, following a jury trial, in favor of the plaintiff, a police officer who was injured by the defendant's negligent conduct on the land of another person. We conclude that the firefighter's rule should not be so extended and, accordingly, we affirm the judgment of the trial court in favor of the plaintiff." (Footnote omitted.) *Levandoski* v. *Cone*, supra, 267 Conn. 654. Accordingly, we conclude that *Levandoski* is the appropriate legal framework by which to analyze the present case and that its holding that the firefighter's rule should not be extended beyond premises liability was not dictum.

Second, to the extent that the concurrence asserts that determining the extent of the firefighter's rule is a legislative issue, we conclude that the legislature's inaction since *Levandoski* is indicative of the legislature's validation of this court's interpretation of the firefighter's rule in that case. *Levandoski* was decided approximately thirteen years ago. Over that time, the legislature has not addressed our decision or passed any legislation to overrule it. "Although we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of [law], and that its subsequent nonaction

may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 78, 68 A.3d 1150 (2013). By choosing not to legislatively overrule *Levandoski*, the legislature has acquiesced to this court's interpretation that the firefighter's rule is limited to premises liability. Indeed, one of the indicators of legislative acquiescence to our interpretation of a statute is the passage of "an appropriate interval [of time] to permit legislative reconsideration . . . without corrective legislative action . . . ." (Internal quotation marks omitted.) *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 494–95, 923 A.2d 657 (2007); see also *Efstathiadis* v. *Holder*, 317 Conn. 482, 493, 119 A.3d 522 (2015).

The concurrence further states that it "respectfully disagree[s] . . . with the analytical approach taken in the majority's opinion insofar as it follows *Levandoski* and broadly holds that the firefighter's rule does not apply beyond the limited context of premises liability." There is nothing broad about our interpretation of *Levandoski*. The concurrence reads into *Levandoski* an interpretation that the written words do not suggest. The concurrence suggests an alleged parade of horribles that transforms the firefighter's rule far beyond its definition. The concurrence suggests, for instance, "that the breadth of the majority's opinion carries with it numerous unintended and deleterious consequences insofar as it invites first responders to bring civil actions against victims of crime and motor vehicle accidents." This suggestion transforms the firefighter's rule into a much broader debate about common-law negligence, duty, and responsibility. This suggestion goes far beyond the facts of the present case and amounts to a general advisory opinion.

As explained in *Levandoski* "[t]he common-law firefighter's rule provides, in general terms, that a firefighter or police officer, *who enters private property* in the exercise of his duties occupies the status of a licensee and, therefore, is owed a duty of care by the property owner that is less than owed to an ordinary invitee." (Emphasis added; internal quotation marks omitted.) *Levandoski* v. *Cone*, supra, 267 Conn. 653–54. The present case involves the issue of whether a property owner who allegedly acted negligently after the police arrived could be liable. The doctrine should be confined to the facts of the present case insofar as it involves a property owner. Even the concurrence suggests that there could be liability in this instance. While the concurrence is content to criticize the "legally flawed dictum" and "errors" of *Levandoski*, we rely upon it as controlling precedent on an issue that is precisely on point with the present case. We also note that *Levandoski*, which was written fourteen years after *Kaminski* and six years after *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), which are both relied on by the concurrence, was a unanimous decision of this court written by Justice Borden. We further note that it would appear that the concurrence wishes to have the rule apply to all first responders, which is an issue that this court has never addressed and is not at issue in the present case. Although the concurrence does suggest that it "leave[s] to another day the question of whether the firefighter's rule applies to emergency medical personnel," its reasoning would certainly apply to such individuals.

There is another important legal concept at issue in the present case—namely, stare decisis. As Chief Justice Rogers has noted in a recent concurring opinion, "[n]o judicial system could do society's work if it eyed each issue afresh in every case that raised it. . . . Indeed, the very concept of the rule of law underlying our own [c]onstitution requires such continuity over time that a respect for precedent is, by definition, indispensable." (Internal quotation marks omitted.) *State* v. *Peeler*, 321 Conn. 375, 378, 140 A.3d 811 (2016); see *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 854, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992); see also *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999) ("Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency . . . . It is the most important application of a theory of [decision-making] consistency in our legal culture and it is an obvious manifestation of the notion that [decision-making] consistency itself has normative value." [Citation omitted; internal quotation marks omitted.]).

"While stare decisis is not an inexorable command . . . even in constitutional cases, the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." (Citations omitted; internal quotation marks omitted.) *Dickerson* v. *United States*, 530 U.S. 428, 443, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000). "Such justifications include the advent of subsequent changes or development in the law that undermine a decision's rationale . . . the need

to bring [a decision] into agreement with experience and with facts newly ascertained . . . and a showing that a particular precedent has become a detriment to coherence and consistency in the law . . . ." (Citations omitted; internal quotation marks omitted.) *Payne* v. *Tennessee*, 501 U.S. 808, 849, 111 S. Ct. 2579, 115 L. Ed. 2d 720 (1991) (Marshall, J., dissenting); see also *State* v. *Peeler*, supra, 321 Conn. 378–79 (*Rogers*, *C. J.*, concurring). We conclude that the present case does not present any special justification that would support a departure from this court's precedent and require this court to overrule *Levandoski*.

The concurrence would overrule *Levandoski* "insofar as it stands for the broad proposition that the firefighter's rule does not extend beyond the context of premises liability." As we have explained previously herein, the proposition that the firefighter's rule does not extend beyond premises liability is, indeed, the precise holding of *Levandoski*. Accordingly, the concurrence in actuality calls for *Levandoski* to be overruled because, according to the concurrence, "many aspects of *Levandoski* are clearly wrong . . . ." (Internal quotation marks omitted.) We disagree. *Levandoski* provided a thorough and detailed analysis of both the history and policies underlying the firefighter's rule. Although the fear of civil liability was not discussed, we are not convinced that there is any proof that this concept actually exists. It is the defendant's burden to persuade us to depart from precedent and extend the rule. The defendant has failed to do so. There is no empirical proof that convinces us that we should extend the rule and ignore existing precedent. In short, we conclude that *Levandoski* was not wrongfully decided. Further, we refuse to accept the concurrence's baseless contentions that *Levandoski* is "legally flawed" and contains "errors."

[6] The concurrence relies on this court's decision in *Kaminski* to support its claim that the firefighter's rule encourages citizens to call for help. Specifically, the concurrence quotes *Kaminski*'s description of the fact that "the defendant, an armed police officer, came to the plaintiffs' home in the course of his professional responsibilities to assist in dealing with the crisis to which the team had been alerted," and this court's statement that "[f]undamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement." *Kaminski* v. *Fairfield*, supra, 216 Conn. 37–38. The concurrence reasons that, "*Kaminski* is significant because it is our seminal recognition, as a matter of public policy, of the benefits of encouraging our state's citizens to seek assistance from our communities' first responders, rather than stoking a fear of liability that would create incentives for delayed calls, self-help, or both." We disagree. These statements from *Kaminski* do not support the policy argument that the concurrence claims is at issue, but instead are "redraped [arguments] drawn from . . . implied assumption of risk." *Christensen* v. *Murphy*, 296 Or. 610, 619, 678 P. 2d 1210 (1984). This language from *Kaminski* can be phrased another way—namely, that the plaintiff, by agreeing to be a police officer, *assumed the risk* of encountering violent people and possibly being injured. As we explain subsequently in this opinion, the assumption of risk doctrine has been abolished in Connecticut. See General Statutes § 52-572h (*l*). Although we agree with the concurrence that the abolition of assumption of risk alone does not warrant the preclusion of the firefighter's rule beyond premises liability cases, the assumption of risk doctrine should not be the basis upon which we decide cases involving the firefighter's rule.

We also agree with the concurrence that "if an individual fails to warn of known, hidden dangers on his premises or misrepresents the nature of [a] hazard" and "such misconduct causes [an] injury to [a firefighter]," there should be an exception to the firefighter's rule that allows a civil action by the firefighter.

We take issue, however, with the assertion by the concurrence that our application of the firefighter's rule represents economic classism insofar as it gives tort immunity only to landowners. We have raised the issue of the questionable continued vitality of the rule and suggested that we are not reaching this issue only because it has not been raised by the parties. See footnote 15 of this opinion. Further, we have suggested that the classification of the type of person entering on property and the respective duty a landowner may have to that individual seems to be a concept no longer accepted by a majority of states. See, e.g., *Berko* v. *Freda*, 93 N.J. 81, 85, 459 A.2d 663 (1983). The concurrence seems to suggest a good reason to do away with the firefighter's rule entirely, instead of extending it in the absence of sound empirical evidence to support the extension. What the concurrence neglects to observe is that the burden of persuasion to extend this doctrine is upon the person seeking the extension, not the person relying upon existing case law. In the absence of empirical evidence that people do not call emergency personnel because they are afraid of civil liability, this

extension must fail for lack of persuasive proof.

Further, the concurrence cites *Baldonado* v. *El Paso Natural Gas Co.*, 143 N.M. 288, 176 P.3d. 277 (2008), in support of a "policy-based approach to the firefighter's rule." In that case, a natural gas pipeline exploded killing twelve members of an extended family who were camping at a nearby campsite. Id., 290. The plaintiffs, who were first responders, claimed that they suffered extreme emotional distress in witnessing the injuries suffered by the victims when the plaintiffs assisted them after the explosion. Id. The New Mexico Supreme Court adopted a policy based approach to the firefighter's rule and held that a firefighter may recover damages if such damages were proximately caused by (1) intentional conduct or (2) reckless conduct, provided the harm to the firefighters exceeded the scope of risks inherent in the firefighters' professional duties. Id. Applying this rule to the case before it, the New Mexico Supreme Court concluded that the firefighters had properly pleaded a claim for intentional infliction of emotional distress. Id. It is interesting that the court noted that "specific duties [of a home-owner]—to warn of hidden hazards and to accurately represent the nature of a hazard—are distinct from the conduct that brings firefighters to the scene, and thus fall outside the scope of [the] rule." Id., 292. Thus, the failure to warn descriptions in the concurrence's hypothetical would appear to be outside the scope of the rule in New Mexico. Further, we note that, pursuant to *Clohersy* v. *Bachelor*, 237 Conn. 31, 56, 675 A.2d 852 (1996), recovery for negligent infliction of emotional distress requires proof of the following: (1) the bystander must be "closely related" to the victim; (2) the bystander's emotional injury must be "caused by the contemporaneous sensory perception" of the event that causes the injury; (3) the injury must be "substantial, resulting in [either] death or serious physical injury"; and (4) the bystander must have sustained a "serious" emotional injury that is "beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response." Likewise, in order to establish a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). It is therefore doubtful that, under Connecticut law, a policeman or firefighter would be able to present a claim for negligent or intentional infliction of emotional distress, regardless of the firefighter's rule.

[7] General Statutes § 52-572h (*l*) provides: "The legal doctrines of last clear chance and assumption of risk in actions to which this section is applicable are abolished."

[8] It is also interesting to note that, while it may appear that the old distinction between licensees and invitees are disappearing, that policy argument may provide stronger support for abolishing the firefighter's rule entirely. Indeed, because one of the very foundations for the firefighter's rule is disappearing, perhaps it would be better to examine each claim on the basis of an ordinary negligence test and allow cases to proceed on that basis.

[9] We note that, although some refuse and recyclable collectors are employed by private companies, some also work in the public sector.

[10] We note that General Statutes § 7-433c (a) provides for certain workers' compensation benefits for police officers and firefighters that are disabled as a result of hypertension or heart disease. The benefits of this provision, however, have been limited by our legislature to those employed before July 1, 1996. See General Statutes § 7-433c (b).

[11] "[M]ore than [thirty] jurisdictions in the United States have adopted the firefighter's rule . . . . Approximately [ten] states do not appear to have addressed the firefighter's rule at all. Of the remaining states, Florida, Illinois, Massachusetts, Minnesota, New Jersey, and New York have abolished or severely limited the rule by statute. . . . Oregon and South Carolina have abolished or declined to adopt the firefighter's rule by judicial decision." (Citations omitted.) *Apodaca* v. *Willmore*, 306 Kan. 103, 113–14, 392 P.3d 529 (2017).

[12] The concurrence asserts that the "overwhelming majority of other courts continue to hold that encouraging citizens to call for help without fear of liability, even for emergencies of their own creation, remains a paramount public policy." None of the cases cited by the concurrence, however, specifically focuses on the public policy rationale of encouraging society to call for help except for a quick mention. Of specific note is the concurrence's reliance on *Berko* v. *Freda*, supra, 93 N.J. 81, and *Lanza* v. *Polanin*, 581

So. 2d 130 (Fla. 1991), where the New Jersey and Florida Supreme Courts examined the public policy arguments behind the firefighter's rule and approved of the policy rationales. Those cases, however, have been superseded in both states by legislative action abolishing the firefighter's rule. See Fla. Stat. Ann. § 112.182 (1) (West 2014); N.J. Stat. Ann. § 2A:62A-21 (West 2014). While New Jersey and Florida courts may have decided that the public policy was in favor of the firefighter's rule, it is the proper role of the legislature to make those determinations, and the legislative bodies in those states decided that the public policy rationales did not support continuation of the firefighter's rule. See *Campos* v. *Coleman*, 319 Conn. 36, 65–67, 123 A.3d 854 (2015) (*Zarella, J.*, dissenting). The concurrence's reliance on *Steelman* v. *Lind*, 97 Nev. 425, 634 P.2d 666 (1981), is misplaced as well, since the Nevada legislature examined the public policy rationales and felt that this concern was not so important so as to permit the continued expansion of the firefighter's rule, although the rule was not completely abolished. See Nev. Rev. Stat. § 41.139 (2015).

[13] To be clear, we are not advocating for the complete abolition of the firefighter's rule in this opinion. The issue has not been raised by the parties. We only mention these other jurisdictions for a broader view of places that are apparently unaffected by the lack of the firefighter's rule.

[14] Even in premises liability cases, however, the double taxation argument fails because, as mentioned previously in this opinion, most homeowners have insurance to cover people who may be injured on their property through the homeowner's negligence.

[15] In fact, the policy considerations are more supportive of a complete abrogation of the rule than an expansion of same. However, because that issue is not before us in the present case, we leave the question of the continuing vitality of the firefighter's rule as to premises liability for another day.

[16] The concurrence provides a litany of possible cases that could occur as a result of this opinion, and, although we will not comment on every single possible hypothetical suggested, we feel that they are less than realistic considering that our opinion does not abrogate traditional elements of a negligence action. This opinion speaks only of the duty owed to a police officer and whether the trial court's judgment granting the motion to strike was legally correct. Consequently, many of those cases to which the concurrence refers may lack the other elements necessary to maintain a negligence action. The concurrence even admits as much, but still asserts that our opinion is improper because it will give these cases their "ill-deserved day in court." We fail to see how someone exercising their right to have an issue adjudicated, unless it is a frivolous claim, should be considered an "ill-deserved day in court."

One possible "ill-deserved" case suggested by the concurrence is that an emergency medical technician could bring an action for injuries arising from a patient's negligence. The concurrence fails to realize that emergency medical technicians are not barred by the firefighter's rule in Connecticut and have brought actions for injuries caused by negligence in the past. See *Nagy* v. *Arsenault*, Superior Court, judicial district of Windham, Docket No. CV-14-6007793-S (May 21, 2015) (60 Conn. L. Rptr. 389). Professor Robert H. Heidt, whom the concurrence cites, refers to another situation where an emergency medical technician in Connecticut brought an action against a heart attack patient after the emergency medical technician slipped on the patient's staircase. See R. Heidt, "When Plaintiffs Are Premium Planners for Their Injuries: A Fresh Look at the Fireman's Rule," 82 Ind. L.J. 745, 784 n.143 (2007); see also J. Dee, "Are Homeowners Liable for Rescuers' Injuries?" Hartford Courant, April 2, 1999, p. A1. The legislature did not pass any legislation in response to this highly publicized incident, however, and emergency medical personnel are still permitted to bring an action against a negligent patient, which is in direct contrast to the concurrence's assertion. Despite this, we have not seen a significant rise in litigation regarding negligently injured emergency medical personnel, and there is no evidence to suggest that a chilling effect on citizens' request for emergency medical assistance has occurred. Other jurisdictions have also refused to extend their respective firefighter's rules to emergency medical personnel, and there has not been any apparent deterrent effect for emergency medical assistance in those jurisdictions. See *Sallee* v. *GTE South, Inc.*, 839 S.W.2d 277, 278 (Ky. 1992); *Kowalski* v. *Gratopp*, 177 Mich. App. 448, 450–52, 442 N.W.2d 682 (1989); *Krause* v. *U.S. Truck Co.*, 787 S.W.2d 708, 713 (Mo. 1990).